Peaeson, J.
 

 Had the defendants a right to stop the plaintiff,when, in running the South line, they came to the line of the grant under which the defendants claimed ? Or had the plaintiff a right to cross that line and go on to the white oak, which was a comer of the grant under which he claimed? The plaintiff’s grant is dated on the 6th, and the defendants’ on the 17th De
 
 *452
 
 cember, 1799. The grants lap. The defendants insist that their title to the lappage has ripened and become the better title, by reason of an adverse possession for more than seven years; and they prove that their ancestor, Isaac Ledbetter, enclosed a field
 
 within the lappage,
 
 and cultivated it for more than seven years, and insist that the possession of this part gave possession of the whole, inasmuch as the plaintiff had no possession within the lappage.
 

 The position of the defendants is sustained by a well settled rule of law, and the only question is, does the proof offered by the plaintiff prevent the application of this rule, by showing that Ledbetter had no possession outside of his fence, or that his possession was not adverse? A witness called by the plaintiff testified that at the time Ledbetter enclosed the field, it was agreed between him and Elizabeth Bryson, the widow of William Bry-son, under whom the plaintiff claims,
 
 that he might put his fence there,
 
 with the understanding that whenever it appeared by a survey that the fence was over the Bryson line, he would set it back.
 

 The field enclosed by the fence was in the south-east part of ■the Bryson grant; the
 
 white oak
 
 is the southwest corner. So, admitting that the defendants had acquired the title by adverse possession under color, of the land enclosed by the fence, it remains a question whether they had acquired title to all the lands within the lappage, outside of the fence. The commissioners were of opinion that the defendants had acquired title to the land enclosed by the fence, and after going to the
 
 white oalc,
 
 ran the plaintiff’s line so as to exclude the field. With this decision the defendants have no right to complain ; for it might have been urged with much force on the part of the plaintiff, that the possession of the field was not adverse, by reason of the agreement in regard to the location of the fence, which screened the ancestor of the defendants from any liability to an action, either of trespass or ejectment, until the Bryson line was ascertained by a survey, and put him on the footing of one who enters and holds by the consent of the owner, and is termed a tenant at will, as distinguished from a trespasser, not liable to an action until the relation is put an end to, and consequently not at liberty to set up
 
 *453
 
 his possession as adverse. It would be monstrous if one who enters by my consent could, after being permitted to continue in possession more than seven years, turn upon me, and say
 
 “
 
 I have now the better title by reason of my possession, and will disregard the agreement under which you permitted me to take possession. ’ ’
 

 As the commissioners have allowed the defendants the benefit of the possession, so as to give them the field, and the plaintiff does not complain, yet we will not put our decision upon that point, because obviously, the plaintiff had a right to run to the white oak, either upon the ground that the possession of the field was not adverse by reason of the agreement, or upon the ground that by the terms of the agreement, Ledbetter, the ancestor of the defendants, disclaimed all right to any land outside of his fence, the legal effect of the agreement being, Ledbetter sets up no claim outside of his fence, but thinks that he has a right to put the fence at a certain place ; to which Elizabeth Bryson consents, with the express understanding that Ledbetter would set back his fence, whenever it appears by a survey that it is over the line of the Bryson grant.
 

 We are of opinion with the Judge below, that supposing the defendants to have acquired title to the land enclosed by the fence, the agreement certainly rebutted the idea of any possession by construction outside of the fence. Consequently the plaintiff had a right to cross the line of the defendants’ grant, and go to the white oak, and the defendants had no right to stop the proces-sioner at the line of their grant — which is the matter in controversy :—
 

 Our difficulty in coming to a conclusion, grew out of the fact that it did not appear affirmatively that Elizabeth Bryson, who made the agreement in reference to the fence, had an estate in the land, by which she was authorised to make the agreement. She was the widow of William Bryson who was the owner of the land, and she continued to live upon it for many years'after his death, and up to the time of her own death. This, we think, is affirmative evidence of the fact that she had a life estate, either under her husband’s will or as dower. But we are of opinion that Ledbetter, the defendants’ ancestor, having made the agree
 
 *454
 
 ment with her as the owner of the estate, or at ail events as one having a right to act for the owner, those claiming under Ledbetter are estopped, and cannot even call that matter in question.
 

 The exception that, the commissioners rejected competent evidence offered by the defendants is not presented, because it is not stated what ihe evidence was. So, this Court has no means of deciding upon its competency or materiality. The judgment below is affirmed.
 

 Pee. Cueiam. Judgment affirmed.