J. R. RIVES, ADMINISTRATOR OF J. B. RIVES, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 28 September, 1932.)

1. **Railroads D b—Violation of city ordinance relating to speed, signals and warnings held negligence.**

    Where a train is operated through a town at an excessive speed without giving warnings by whistle or bell in violation of an ordinance of the town the railroad company is guilty of negligence.

2. **Same—Where pedestrian stands upon straight, unobstructed track in day-time until struck by train he is guilty of contributory negligence.**

    Where the evidence discloses that plaintiff's intestate stood upon the tracks of the defendant railroad company in daylight, where the tracks

were straight and unobstructed, until he was hit by defendant's fast moving train, the evidence discloses contributory negligence as a matter of law continuing up to the moment of impact.

**3. Same: Negligence B b—Doctrine of last clear chance does not apply where defendant is guilty of contributory negligence as a matter of law.**

Where in an action by an administrator to recover damages against a railroad company for the death of his intestate the evidence discloses that the defendant was negligent and that the plaintiff's intestate was guilty of contributory negligence as a matter of law and that the contributory negligence continued up until the time the intestate was struck and killed by the defendant's train: *Held*, the doctrine of the last clear chance does not apply, and the defendant's motion for judgment as of nonsuit was properly allowed.

CIVIL ACTION, before *Moore, Special Judge,* at January Term, 1932, of HALIFAX.

The tracks of defendant run through the center of the town of Enfield. There was an ordinance of the town prescribing a speed limit of fifteen miles per hour. Two streets in the town approach the tracks of the railroad company at right angles, but do not cross the same. Pedestrians for a period of from eighteen to twenty-five years, walked across the tracks at a foot crossing referred to by some of the witnesses as being similar to a pig path. There was a northbound track and a southbound track with certain parallel switches or pass tracks.

On the morning of 9 March, 1931, plaintiff's intestate started across the tracks of defendant. An eye witness narrating the events, testified as follows: "I was right in front of Bellamy's wholesale house when Mr. Rives was killed. I was walking along on the west side. I saw Mr. Rives when he came out between the old hotel and Bellamy's wholesale house with a bottle of milk. He went over and stopped at the end of the ties and stayed there about a minute. There was a freight train passing on the other side something like four or five cars. He stayed there until the caboose passed, stepped over and started across, and when I knew anything the southbound train blew a distress blow as near to me as fifteen feet. The freight was moving. There was a man on the caboose. The man on the caboose was saying something to Mr. Rives, but I could not understand it. . . . I am sure Mr. Rives never saw the train, and I never saw it until it blew. . . . Mr. Rives was standing up erect in the middle of the southbound track and had made one step over the irons when the train (freight) got by. The man on the caboose said something to Mr. Rives and by the time the caboose started by him he started to go across the track. I did not see him look toward the north the way the train was coming." There was. other

evidence that at the place where the plaintiff's intestate was killed the tracks were straight and the view unobstructed for a distance of from a quarter to a half mile.

At the conclusion of evidence for plaintiff there was judgment of nonsuit and the plaintiff appealed.

*J. W. Bailey and Ward & Grimes for plaintiff.*
*Thomas W. Davis, F. S. Spruill and Dunn & Johnson for defendant.*

BROGDEN, J. The evidence paints the following picture: The defendant operates through the town of Enfield two parallel tracks, designated as a southbound track and a northbound track. A pedestrian using a much frequented path starts across the tracks. A freight train is slowly moving on the northbound track. He stands upon the southbound track, waiting for the freight train to clear, and as the caboose passes him, a man on the caboose says something to him. While thus standing on the southbound track a fast passenger train is rushing down upon him at the rate of fifty or sixty miles an hour, without the sound of whistle or bell and in violation of an ordinance of the town. The pedestrian does not look in the direction from which the passenger train is approaching, and perhaps never knew what struck him. The killing occurred at about nine o'clock in the morning of a clear day and the vision of the pedestrian was unobstructed for a distance of approximately a half mile.

Upon the foregoing facts three propositions of law must be considered in order to determine ultimate liability:

First: The defendant railroad company was guilty of negligence. This conclusion has been so frequently announced by the court in similar cases that it is unnecessary to cite authorities.

Second: The pedestrian was guilty of contributory negligence. In the daytime on a clear day he was standing on a live track without looking or otherwise taking any precaution for his own safety, and stood there until a fast passenger train snuffed out his life. Consequently he was guilty of contributory negligence, which continued up to the moment of the impact.

Three: Is the doctrine of "last clear chance" applicable? This inquiry must be answered in the negative. It is said in *Redmon v. R. R.,* 195 N. C., 764, 143 S. E., 829: "The doctrine does not apply when contributory negligence of the injured party barred recovery as a matter of law. Otherwise contributory negligence would totally disappear.

Affirmed.