CLARKSON, J., dissenting.
This is an action to recover damages for the death of plaintiff's intestate. C. S., 160.
The facts shown by all the evidence at the trial with respect to the liability of the defendants to the plaintiff for damages resulting from the death of her intestate are as follows:
About 5:30 o'clock p.m., on 9 March, 1936, while he was sitting on the end of a crosstie in the track of the defendant Southern Railway Company, within the corporate limits of the town of Waynesville, in Haywood County, North Carolina, plaintiff's intestate was struck and killed by a train owned by the defendant Southern Railway Company and *Page 500 
drawn by two of its engines, one operated by the defendant C. Burt, and the other by the defendant D. H. Call, both of whom were employees of their codefendant.
The train was a "doubleheader." As it approached the crosstie on which plaintiff's intestate was sitting, from a westerly direction, the train was traveling at a speed of 40 to 50 miles per hour, in violation of an ordinance of the town of Waynesville, which prescribed a maximum speed for trains operated within the corporate limits of said town, of six miles per hour. As it approached the point on the track where plaintiff's intestate was sitting, the whistles on the engines drawing said train were blown repeatedly by the engineers. No effort was made by them to lower the speed of the train until it was about 160 feet from the point where plaintiff's intestate was sitting and where he was struck and killed by the train. He died almost immediately after he was struck and injured by the train. His death was the result of his injuries.
Plaintiff's intestate was about 60 years of age at the date of his death. He was in good health, both physically and mentally. He was a carpenter by trade, and had worked at his trade during the week preceding his death. He left the station in Waynesville about 4 o'clock p.m., on 9 March, 1936, and after walking on defendants' track in a westerly direction for a distance of about 300 yards, he sat down on the end of a crosstie in said track. He continued to sit on the crosstie for about an hour, until he was struck and killed by defendant's train about 5:30 o'clock p.m. During this time he was warned by passers-by that he was sitting in a place of danger; that it was about time for a train. He was advised by at least two persons, who passed him, to get up from the crosstie and leave. He responded to these warnings and to this advice, but continued to sit on the crosstie. The track from the point where plaintiff's intestate was sitting, in a westerly direction, for a distance of about 3,000 feet, was straight. There was nothing on the track which would have prevented plaintiff's intestate from seeing a train approaching from the west in ample time for him to have gotten up from the crosstie and left the track. There was no evidence tending to show that the sight or hearing of plaintiff's intestate was defective, or that at any time while he was sitting on the crosstie he was not conscious of his peril.
Shortly before he sat down on the crosstie, while he was walking on the track plaintiff's intestate staggered between the rails of the track. After he sat down, he leaned over, with his elbows on his knees, and with his head between his hands. He remained in that position until he was struck and killed by the train. There was no evidence tending to show that any of the persons who saw him as he sat on the crosstie — some of whom knew him — offered him any assistance because of apprehension *Page 501 
that he was sick, or for any reason unable to care for himself. All the evidence showed that the persons who warned him of his peril and advised him to get up from the crosstie and leave, left him sitting on the crosstie, fully conscious of his perilous situation.
W. L. Hardin, Jr., the only witness who testified that he saw plaintiff's intestate immediately before he was struck and killed by the train, testified as follows:
"I live in Waynesville. I am sales agent of the Standard Oil Company. My office is near the track of the Southern Railway Company. I am familiar with the track from the station in Waynesville to the station in Hazelwood. It is used constantly by the public as a walkway. It is straight from the station in Waynesville in a westerly direction for a distance of over 3,000 feet. There are no obstructions on or near the track which prevent a person on the track from seeing a train approaching the station in Waynesville from the west for a distance of more than 3,000 feet.
"I knew Joe Lemings. I saw him from my office sitting on a crosstie in the track of the Southern Railway Company on the afternoon of 9 March, 1936. When I came out of my office and first saw him, he was at an angle from me — a distance of about 150 feet. He was sitting on the crosstie in a leaning position, with his elbows on his knees, and his hands between his knees. His left side was turned toward me. I did not pay any particular attention to his arms. I did not have time to do so. I saw the train coming from the west. It was coming at a speed of 40 to 45 miles per hour. It was about 160 feet from where Joe Lemings was sitting on the crosstie. The engineer was trying to stop the train. He had put on his brakes. I saw sparks of fire on the track, under the wheels of the engine. I did not see the train strike Joe Lemings. After it struck him I went to the place where I had seen him before he was struck. His body was beside the track. He was dead. The train stopped after it struck him at a distance of 160 to 180 feet.
"When I saw Joe Lemings sitting on the crosstie, before he was struck by the train, there was nothing about him to indicate that there was anything the matter with him. He was just sitting on the crosstie, leaning over, with his feet on the ground, his elbows on his knees, and his hands between his knees. The engineer on defendant's train could have seen him in that position for a distance of at least 3,000 feet."
The issues submitted to the jury were answered as follows:
"1. Was the plaintiff's intestate injured and killed by the negligence of the Southern Railway Company, as alleged in the complaint? Answer: `Yes.'
"2. Was the plaintiff's intestate injured and killed by the negligence of the defendant C. Burt, as alleged in the complaint? Answer: `Yes.' *Page 502 
"3. Was the plaintiff's intestate injured and killed by the negligence of the defendant D. H. Call, as alleged in the complaint? Answer: `Yes.'
"4. Did the plaintiff's intestate, by his own negligence, contribute to his own injury and death, as alleged in the answer? Answer: `Yes.'
"5. Notwithstanding such negligence on the part of plaintiff's intestate, could the defendants, by the exercise of ordinary care, have avoided the injury and death of plaintiff's intestate? Answer: `Yes.'
"6. What damage, if any, is plaintiff entitled to recover? Answer: `$2,500.'"
From judgment that plaintiff recover of the defendants and each of them the sum of $2,500 and the costs of the action, the defendants appealed to the Supreme Court, assigning errors in the trial.
As we are of the opinion that there was error in the refusal of the trial court to allow defendants' motion, at the close of all the evidence, for judgment as of nonsuit (C. S., 567), we shall not discuss assignments of error on this appeal, presenting defendants' contentions that there was error in the admission of evidence offered by the plaintiff, in the exclusion of evidence offered by the defendants, and in the charge of the court to the jury. Conceding, without deciding, that neither of these assignments of error can be sustained, we are of opinion that there was error in the refusal of defendants' motion for judgment as of nonsuit, and that for this reason the judgment should be reversed, and that the action should be dismissed.
Conceding, as contended by the plaintiff, that there was no error in the trial of this action with respect to the first, second, third, or fourth issue, we find no evidence in the record tending to support an affirmative answer to the fifth issue. In view of the answer to the fourth issue, the judgment is supported only by the affirmative answer to the fifth issue. There was no evidence tending to show that plaintiff's intestate as he sat on the crosstie, and as the train approached him, was at any time in a helpless or even an apparently helpless condition. For this reason the principle on which the doctrine of the "last clear chance" is founded is not applicable to this case. See Reep v. R. R., 210 N.C. 285,186 S.E. 318; Stover v. R. R., 208 N.C. 495, 181 S.E. 336; Rives v. R. R.,203 N.C. 227, 165 S.E. 709. In Reep v. R. R., supra, it is said: "All that the evidence discloses is that the intestate was sitting on the crosstie, with his head resting upon the extended fingers of his right hand. This was not sufficient to put the engineer upon notice that the *Page 503 
intestate would not get off of the track before the engine reached and struck him. There was no evidence that any disability of the intestate was known or was apparent to the engineer. The engineer therefore had a right to assume up to the last moment that the intestate would get off of the track." In that case, a judgment for the plaintiff was reversed for error in submitting to the jury an issue involving the principle on which the doctrine of the "last clear chance" is founded. The instant case cannot be distinguished from that case.
This case is distinguishable from Jenkins v. R. R., 196 N.C. 466,146 S.E. 83. In that case it is said: "There was evidence that deceased could not have been seen by a person on the train at a greater distance than about 400 feet, because of a curve in the track; that deceased had gone upon the track as a licensee, and while lawfully walking thereon had become suddenly ill, and for that reason had sat down upon the end of a crosstie; that he was sitting there as the defendant's train approached him in an apparently unconscious and therefore helpless condition, and that the train which was moving at a rate of speed not less than fifteen miles per hour, could not have stopped at that point within less than 600 feet." In that case a judgment dismissing the action as of nonsuit was reversed.
In the instant case, there was no evidence tending to show that the deceased was in a helpless condition at any time after he sat down on the end of the crosstie until he was struck and killed by defendant's train. All the evidence showed that defendant's engineers saw the deceased as he sat on the end of the crosstie, and gave ample warning to him of the approach of the train. When the engineers realized that the deceased continued to sit on the crosstie, and failed to heed their warning, they put on the brakes of their engines, and exerted themselves to the utmost of their ability to stop the train and avoid striking the deceased. It was then too late. The proximate cause of the injuries and death of plaintiff's intestate was his negligence, which continued up to the moment when he was struck by defendant's train. On all the facts shown by the evidence, the doctrine of "the last clear chance" cannot be invoked in this case.
There was error in the refusal of defendants' motion at the close of all the evidence, for judgment as of nonsuit. The judgment is
Reversed.