CHARLES W. GIBSON ET AL. v. PERCY JANE DUDLEY ET AL.

(Filed 28 February, 1951.)

1. **Adverse Possession § 3—Plaintiff's evidence held to show that possession was not adverse and nonsuit was proper.**

Plaintiff's evidence to the effect that he went into possession of a lot purchased by him, and used a driveway on the side of the lot under the belief that the entire driveway was on his property until defendant bought the adjoining lot, when it was discovered that a part of the driveway was admittedly included in defendant's deed, and that thereupon plaintiff conferred with defendant as to the further use of the driveway and consequently asked his attorney to fix up papers to make it a joint driveway permanently, *is held* insufficient to show possession by plaintiff adverse to defendant prior to the discovery of the inadvertence.

GIBSON v. DUDLEY.

**2. Same—**

    A grantee's occupation of land beyond the boundary called for in his deed under the mistaken belief that it belonged to him is not adverse to the true owner, since it is the intent to claim against the true owner which renders the entry and possession adverse.

**3. Same—**

    Every possession of land is presumed to be under the true title and permissive rather than adverse.

**4. Appeal and Error § 38—**

    The judgment of the lower court is presumed correct and the burden is upon appellant to show error.

APPEAL by plaintiffs from *Clement, J.,* May Term, 1950, of FORSYTH.

Civil action to establish title to part of driveway between plaintiff's and defendant's residential properties.

The plaintiffs and the defendant own adjoining lots on the west side of Buxton Street in the City of Winston-Salem. Each extends 150 feet back to an alley. There is an eight-foot driveway leading from the entrance on Buxton Street to plaintiff's garage about 90 feet from the street. This driveway passes partly over plaintiff's property and partly over defendant's property, according to the calls in their respective deeds. The controversy is over a triangular strip of land in the driveway which is four feet wide on Buxton Street and tapers to a point in the dividing line between the two properties a distance of fifty feet from the street.

There is a house on plaintiff's lot which he purchased in 1924 and went immediately into possession. He did not have the exact boundaries of his lot established at the time, but assumed the driveway was entirely on his premises. He so used it without question until the defendant purchased the adjoining vacant lot in 1948, had it surveyed, and unearthed the iron stakes which were originally put down to mark the dividing line between the two lots.

The plaintiff then conferred with the defendant and they first suggested a joint driveway. Plaintiff went to his lawyer and "asked him to fix up papers to make it a joint driveway permanently." Instead, the lawyer notified the defendant that plaintiff was claiming title to the entire driveway by adverse possession for twenty years.

This suit is to establish the plaintiff's claim to the part of the driveway covered by defendant's deed. From a judgment of nonsuit entered at the close of all the evidence, the plaintiff appeals, assigning errors.

*Parker & Lucas and Elledge & Browder for plaintiffs, appellants.*

*Womble, Carlyle, Martin & Sandridge for defendants, appellees.*

STACY, C. J.   The question for decision is whether the evidence, taken in its most favorable light for the plaintiff, survives the demurrer and carries the case to the jury.   The trial court answered in the negative, and we approve.

The vital question is the character of plaintiff's possession of the triangular strip of the driveway embraced in defendant's deed prior to 1948, whether permissive or adverse.   The law presumes it was permissive.   He does not say it was adverse.

The plaintiff purchased and went into possession of his lot in 1924. He thought his deed covered the whole of the driveway, including the *locus in quo.*   "I thought all the time it was my property."   Not until 1948, when the defendant purchased the adjoining lot and had it surveyed, did he learn otherwise.   He then had a conversation with the defendant about his encroachment on the defendant's lot.   "I asked Mr. Dudley what he was going to do about letting me continue to use the driveway.   He told me, we suggested we'd have a joint driveway."   The plaintiff then went to his lawyer and asked him "to fix up papers to make it a joint driveway permanently."   Instead, a few days later the lawyer notified the defendant by letter that the plaintiff was claiming title to the whole of the driveway.   The plaintiff says, "I did not ask Mr. Elledge to write a letter to Mr. Dudley; Mr. Elledge wrote the letter; I never saw the letter."

The plaintiff further testified that the triangular strip in question "is not covered by my deed.   I thought all the time it was my property. . . . I am claiming the old established driveway that was there when I bought the property, . . . and I have continued to use it since then.   I thought all the time it was mine. . . . I am claiming by adverse possession by use by reason of my driveway. . . . I have used the property for a driveway and also to store my coal in the basement since I bought the property 24 years ago."

Note, the plaintiff says he is *now* claiming the small strip in question by adverse possession, but nowhere does he say his claim prior to 1948 was other than under his deed, which admittedly does not cover the *locus in quo,* while the defendant's deed does.   Certainly he was not claiming it as against the true owner when he first discovered the error and went to see the defendant and then his own lawyer about fixing up papers to make it a joint driveway.   Prior to this time, "he did not intend to usurp a possession beyond the boundaries to which he had a good title."   *Bynum v. Carter,* 26 N.C. 310.   When he first went into possession he was claiming, and intended to claim, only that which he had purchased, and there was no occasion for any change in his purpose prior to the discovery that he was encroaching on defendant's lot.   No hostile occupancy oc-

curred up to this time as the plaintiff thought his deed covered the entire driveway. His claim then was not one of adverse possession but one of rightful ownership. If his possession were exclusive, open and notorious, as he now contends, no one regarded it as hostile or adverse, not even the plaintiff himself, for he was not conscious of using his neighbor's land. "I thought all the time it was mine." These conclusions are impelled by the plaintiff's own testimony.

The observations of *Ruffin, C. J.,* in *Green v. Harman,* 15 N.C. 158, appear apropos: "If indeed, two persons own adjoining lands, and one runs a fence so near the line as to induce the jury to believe that any slight encroachments were inadvertently made, and that it was the design to run on the line, the possession constituted by the enclosure might be regarded as permissive, and could not be treated as adverse, even for the land within the fence, except as it furnished evidence of the line in a case of disputed boundary." No boundary dispute exists here, since admittedly the defendant's deed covers the *locus in quo,* and the plaintiff's deed does not.

Again in *Vanderbilt v. Chapman,* 175 N.C. 11, 94 S.E. 703, *Allen, J.,* says: ". . . every possession of land is presumed to be under the true title . . . and if the possession is by mistake or is equivocal in character, and not with the intent to claim against the true owner, it is not adverse." Accordant, *King v. Wells,* 94 N.C. 344; *Boyden v. Achenbach,* 79 N.C. 539; *S. c.,* 86 N.C. 397; *Ray v. Lipscomb,* 48 N.C. 186. "It is the occupation with an *intent* to claim, against the true owner, which renders the entry and possession adverse." *Parker v. Banks,* 79 N.C. 480.

Bulge the plaintiff's testimony as we may, it hardly seems capable of being stretched to a claim of adverse possession prior to the letter of plaintiff's counsel in 1948. Even then the plaintiff is cast in a role he did not know he was taking. The law never presumes a wrong; quite the reverse; it does not ascribe one's act to covetousness when all the evidence points only to an inadvertence. Indeed, the plaintiff's daughter says, "We assumed it was ours." It would be strange if one who enters permissively upon the premises of another could camouflage his intention to claim adversely for twenty years, then turn upon the owner and say, "I now have the better title by reason of my possession, and I will disregard your indulgence and assert a right to all you have allowed me to occupy." *Bryson v. Slagle,* 44 N.C. 449. Fortunately, the law is not so written. *Snowden v. Bell,* 159 N.C. 497, 75 S.E. 721; *Mebane v. Patrick,* 46 N.C. 23; *Ingraham v. Hough,* 46 N.C. 39.

On appeal here, the plaintiff, appellant, not only has the laboring oar, but the tide is also against him. *Cole v. R. R.,* 211 N.C. 591, 191 S.E. 353. In the instant case he is faced with two contrary presumptions, the

one that his possession was permissive and not adverse, the other that the judgment of the trial court is correct. The impression prevails that the record as presented fails to surmount these barriers. The following authorities also support the ruling below, some directly, others obliquely. *Darr v. Aluminum Co.,* 215 N.C. 768, 3 S.E. 2d 434; *Weaver v. Pitts,* 191 N.C. 747, 133 S.E. 2; *Dawson v. Abbott,* 184 N.C. 192, 114 S.E. 15; *S. v. Norris,* 174 N.C. 808, 93 S.E. 950; *Waldo v. Wilson,* 173 N.C. 689, 92 S.E. 692; *Land Co. v. Floyd,* 171 N.C. 543, 88 S.E. 862; *King v. Wells,* 94 N.C. 352; *Gilchrist v. McLaughlin,* 29 N.C. 310; Anno. 97 A.L.R. 26; 1 Am. Jur. 916, *et seq.*

The judgment of nonsuit will be upheld.

Affirmed.