J. HOMER BEAMAN v. SOUTHERN RAILWAY COMPANY AND G. W. MORRIS.

(Filed 21 October, 1953.)

### 1. Appeal and Error § 38—

The presumption is in favor of the correctness of the judgment of the lower court, and the burden is upon appellant to show error amounting to a denial of some substantial right.

### 2. Railroads § 4—Nonsuit on ground of contributory negligence upheld in this case.

The evidence in this case tended to show that plaintiff was thoroughly familiar with the crossing in question, that he stopped some thirteen feet before reaching the crossing, looked and listened and, seeing and hearing no train, proceeded forward and did not see defendant's train until his right front wheel crossed the first track, at which time the train was some 125 to 175 feet away, although from such place a train could have been seen approaching from that direction for a distance of some 300 feet, and that the train struck the left rear of his car before he could clear the crossing. The judgment of nonsuit entered by the trial court upon the issue of contributory negligence is upheld under the presumption in favor of the correctness of the trial court's decision.

WINBORNE, J., took no part in the consideration or decision of this case.

DEVIN, C. J., dissenting.

JOHNSON, J., concurs in dissent.

APPEAL by plaintiff from *Clement, J.,* July Term, 1953, McDOWELL. Affirmed.

BEAMAN *v.* R. R.

Civil action to recover compensation for personal injuries and property damage resulting from auto-train crossing collision.

The defendant's single-track line about two miles east of Marion, N. C., runs in an east-west direction. An unpaved public road crosses the tracks at grade at about a 50-degree angle so that a motorist traveling in a northerly direction would approach the crossing at an angle of approximately 140 degrees. He would, for practical purposes, be in a position to look directly down the track in a westerly direction to a point where his vision was obstructed or would extend.

Plaintiff lives on the south side of and 250 to 300 feet from the railroad. His driveway enters the public road about 25 feet south of the railroad. His place of business is on the north side so that for many years he has traveled back and forth over this grade crossing, and he was, at the time complained of, familiar with all the surrounding conditions.

The tracks west of the crossing are straight for a distance of 158 feet. They then, for some distance, curve gradually to the south so that a person at the crossing can see the switch stand, 220 or 225 feet away. Looking along the north rail, he can see 100 feet farther, that is, for a distance of 300 or 325 feet. On the defendant's right of way, on the south side, there are large and small trees, bushes, and vegetation. A large oak with overhanging branches, one of which is within seven feet of the south rail, stands within 68 feet of the crossing.

On the morning of 13 September 1950, plaintiff approached the crossing from the south. He stopped with his left front wheel approximately thirteen feet from the south rail and the right wheel within six to eight feet thereof. He was in the driver's seat on the left, about twenty-one or twenty-two feet from the south rail. He looked and listened. He saw no train and heard no whistle or other signal. He then started forward. When his right wheel got across the first track, but before the left wheel had reached it, he saw a train coming from the west, 125 to 175 feet away. The speed of the train was estimated to be 20 to 50 m.p.h. About the time plaintiff saw the train, "it blew two or three jerky blows on their whistle or horn." "When I saw that train coming, I accelerated my car but I was not successful in clearing the crossing." The Diesel engine struck the left rear side of the automobile and plaintiff suffered certain personal injuries. His automobile was practically demolished.

There is a sidetrack west of the crossing and on the south side of the main line. The switch stand is on the south side about 220 feet from the crossing. One near the crossing can see down the track to this switch stand or a short distance beyond.

While plaintiff makes certain allegations respecting the roughness of the crossing, there is no evidence it stalled his car or impeded him when he undertook to drive across ahead of the train.

At the conclusion of plaintiff's evidence in chief, the court, on motion of defendant, entered a judgment of involuntary nonsuit. Plaintiff excepted and appealed.

*Paul J. Story and Edwin S. Hartshorn for plaintiff appellant.*
*W. T. Joyner and Proctor & Dameron for defendant appellees.*

BARNHILL, J. That the testimony offered by plaintiff, considered in the light most favorable to him, discloses negligence on the part of defendant may be conceded. If the judgment of nonsuit is to be sustained, it must be sustained for the reason plaintiff was guilty of contributory negligence as a matter of law.

On this phase of the case we must admit that this appeal presents a close question. It is a borderline case in which the presumption the trial judge ruled correctly must be considered in determining whether the appellant has shown prejudicial error.

"Every decision of a competent court must be deemed to be according to the law and the truth of the case until the contrary is shown." *Gaston, J., Wade v. Dick,* 36 N.C. 313.

On an appeal, error will not be presumed. *Hayes v. Lancaster,* 200 N.C. 293, 156 S.E. 530; *Cole v. R. R.,* 211 N.C. 591, 191 S.E. 353; *Manufacturing Co. v. Call,* 211 N.C. 730, 192 S.E. 105. Instead, "the ruling of the court below in the consideration of an appeal therefrom is presumed to be correct." *Hogsed v. Pearlman,* 213 N.C. 240, 195 S.E. 789; *Warren v. Land Bank,* 214 N.C. 206, 198 S.E. 624.

The burden is on the appellant, *Cole v. R. R., supra; Gold v. Kiker,* 218 N.C. 204, 10 S.E. 2d 650; *Gibson v. Dudley,* 233 N.C. 255, 63 S.E. 2d 630. He must show error, *Manufacturing Co. v. Call, supra; White v. Price,* 237 N.C. 347, 75 S.E. 2d 244; *McCune v. Manufacturing Co.,* 217 N.C. 351, 8 S.E. 2d 219; *Freeman v. Preddy,* 237 N.C. 734, 76 S.E. 2d 159, and "he must make it appear plainly . . ." *Scott v. Swift & Co.,* 214 N.C. 580, 200 S.E. 21; *Quelch v. Futch,* 175 N.C. 694, 94 S.E. 713. (For other cases relating to the burden on appeal, see 2 N. C. Digest, Appeal and Error, Key 901.)

Here the plaintiff was thoroughly familiar with the crossing and the surrounding area. He knew that the tracks to his left curved in a southerly direction. He saw the trees and bushes along the track almost daily. He knew it was a dangerous crossing. It was a clear day and the windows to his automobile were open. He looked to the right and then to the left and there was nothing that he could see coming from the west. He then looked forward and proceeded to cross the track. When he traveled only from seven to nine feet and his right wheel was across the first rail, he saw a train to his left, from 125 to 175 feet from the crossing. Why did

he not see the train almost directly in front of him before it had traveled from 125 to 175 feet beyond all obstructions? Was it for the reason he looked once and then looked no more as his evidence seems to indicate?

He was asked: "At the time you stopped and looked you did not look any more until you got your wheels on the track, did you look to the left or west any more?" To this he replied: "I looked to the left and then I looked forward because you had to look where your car was going."

"Q. You looked straight ahead?

"A. Yes."

In explaining why he did not see the train until it was within about 125 feet of him when he could have seen it along the north rail for 300 or 325 feet, he testified: "I got the right front wheel across the south rail of that track which took some little time from where I was stopped back here."

The record is not such as to permit us to say that the court below was in error in concluding that if plaintiff had looked slightly to his left as he put his vehicle in motion, he would have seen the approaching train in ample time to avoid the collision. Instead, his evidence supports the conclusion that he looked once and then looked no more. The distance the train had traveled between the time he looked and the time he actually saw it indicates strongly that it must have been in full view before he actually reached the zone of danger, and, as he was traveling at a speed of only three or four miles per hour, he could have stopped instantly. It would seem, therefore, that the line of decisions represented by *Parker v. R. R.*, 232 N.C. 472, 61 S.E. 2d 370, and the cases there cited, is controlling.

As stated by *Stacy, C. J.*, in *Gold v. Kiker, supra:*

"It may be conceded that the record is such as to leave the matter in some doubt. This alone would seem to defeat the one assignment of error on appeal, as the party alleging error has the laboring oar and must overcome the presumption against him . . . Verdicts and judgments are not to be disturbed except upon a showing of prejudicial error, *i.e.*, error which amounts to a denial of some substantial right. (cases cited.)"

As the conclusion plaintiff has failed to overcome the presumption against him prevails, the judgment entered must be

Affirmed.

WINBORNE, J., took no part in the consideration or decision of this case.

DEVIN, C. J., dissenting: I am unable to agree with the majority opinion in this case. The testimony of the plaintiff does not, in my opinion, afford evidence of contributory negligence sufficient to justify a compulsory nonsuit. The well-established rule in this jurisdiction is that the defendant's motion for judgment of nonsuit on the ground of contributory negli-

R. R. *v.* Trucking Co.

gence may be allowed only when "the plaintiff's evidence establishes such negligence so clearly that no other conclusion may be reasonably drawn therefrom." *Edwards v. Vaughn,* 238 N.C. 89, and cases cited.

I think the plaintiff was entitled to have his case submitted to the jury.

Johnson, J., concurs in dissent.