DOROTHY A. ARVIN, ADMINISTRATRIX OF THE ESTATE OF CHARLES ARVIN, DECEASED, v. C. R. McCLINTOCK AND THE SOUTHERN RAILWAY COMPANY.

(Filed 20 January, 1961.)

**1. Negligence § 26—**

While nonsuit for contributory negligence is proper only when plaintiff proves himself out of court, considering the evidence in the light most favorable to plaintiff and giving him the benefit of every reasonable intendment thereon and inference therefrom, when plaintiff's own evidence establishes negligence on his part constituting a proximate cause of the injury as the sole reasonable conclusion, nonsuit for contributory negligence is proper.

**2. Railroads § 4—**

A railroad crossing is in itself notice of danger, and a motorist is required not only to stop, look and listen before entering upon a grade crossing, but to stop at a place where his precaution will be effective.

**3. Same—**

Where plaintiff's evidence tends to show that his intestate stopped the truck he was driving momentarily before entering upon a railroad grade crossing within a municipality, and was struck by a train, that the track was straight for a long distance in the direction from which the train approached, and that a person could see down the track when within twelve or fifteen feet of the crossing, is held to show contributory negligence as a matter of law on the part of intestate.

**4. Negligence § 10—**

The doctrine of last clear chance is not applicable when plaintiff is guilty of contributory negligence as a matter of law.

BOBBITT, J., concurring in result.

HIGGINS and RODMAN, JJ., join in concurring opinion.

APPEAL by plaintiff from *Clark, J.,* at March Civil Term, 1960, of WAKE.

Civil action to recover damages for the alleged wrongful death of Charles Arvin in a collision between a fuel truck operated by plaintiff's intestate, and a train of defendant Railway Company, at a railroad grade crossing in the City of Raleigh, North Carolina, on 1 April, 1958.

The collision occurred where the defendant's railroad tracks intersect Blount and Hoke Streets. The tracks run generally in a northwest-southeast direction and the plaintiff's intestate approached the railroad from the easternmost side of the tracks, and the train was traveling from south to north.

Upon trial in Superior Court Henry Muldrove, an eye witness to the collision, offered by plaintiff, testified in pertinent part substantially as follows: " * * * On April 1, 1958, about 5:30 in the afternoon, I was driving a 1956 Chevrolet car on South Blount Street, going south, coming from home. I was driving the car from Smithfield to Blount, then turned and went out south. I was coming by Sinclair place and I saw an oil truck pull out from Sinclair and I slowed down. I slowed down and pulled on out. The Sinclair truck pulled on out, going on towards Buckeye Company across the railroad. The Buckeye Oil plant is across the railroad, which is in a southerly direction. At that time I did not see any train. I did not hear any train. I did not see any one out at the railroad, any person standing out there. The truck was easing along slowly in front of me. I was behind it and it went on across the railroad, and in a little bit got half-way across, the train blowed and when it blowed, hit, all about the same time. When I first saw the train it was not in my vision very long before it hit the truck * * * At the time I saw the train I have an opinion as to the speed of the train. In my opinion the approximate speed of the train when I first saw it was 40 miles per hour * * * I did not hear any bell on that train. There were no lights at that crossing * * * ."

And on cross-examination witness Muldrove testified: " * * * When the collision occurred between the truck and the train, I was about 90 feet from the track or rail and behind the truck, driving along slowly. At that time I was watching the truck. I had my mind centered on that truck as it went on the rail. I was driving slow behind the truck because I let the truck get out of the way. I was 90 feet behind that truck all the time after it pulled out in the street in front of me. There was no automobile between my car and the truck at that time. I saw no other car at all anywhere at the time

when it pulled out in front of me * * * The oil truck in front of me won't even out of low gear as it approached the rail— not the way it was going, just moving slowly, and when it came up to the rails it stopped a little bit and pulled on off. I saw that truck come up close to the railroad tracks. The truck did come to a stop close to the tracks before it pulled on off. That truck, when it came to that stop before it pulled on off again, was a couple of feet back from the rail and in front of me. I couldn't tell exactly how close it was to the rails but it did stop but went right up on the railroad. I don't think it was as close as 5 feet to the tracks. When it stopped it was back a few feet from the track. It stopped long enough to come to a standstill, then pulled off. It came to a full stop and immediately pulled off * * * ."

Another witness for the plaintiff, L. T. Hoviss, in answer to the following question, "From your observation as of April 1, 1958, how far did you have to get to the crossing before you could see the rails beyond the crossing, looking in a southeasterly direction?", said: "The front of my automobile would need to be within 12 to 15 feet, I'd say, of the railroad."

Mrs. L. T. Hoviss, who was in the car with her husband, testified, "The weather was clear and fair that day."

Another witness for plaintiff, Mr. J. W. Arvin, father of the plaintiff's intestate, testified that his son had driven across the crossing before and was familiar with said crossing. "On this particular day, my son was making a delivery of kerosene to one of my customers. At the time of the collision the truck had on it a mixed load of kerosene, fuel oil and gasoline. I estimated the load itself as weighing about 10,000 pounds and it was not fully loaded then. I had instructed my son to go and pick up some fuel at the bulk plant, but it wasn't a load, just a part of a load. I had instructed him to make delivery of kerosene to two of my customers that afternoon. Before April 1, 1958, my son had driven that truck some but not often. I would say he drove it as much as two or three times a week * * * He had not driven this truck across the crossing in question many times before * * * He had been to the Sinclair bulk plant but I don't recall ever sending him to the plant. He probably went with me. He could have gone but I don't recall how many times or how often, but wasn't but a few times, if he had * * * He did make some trips to the Sinclair bulk plant in that truck with me. On those trips I crossed this crossing. I would cross it going in an easterly direction going from my place of business, and then coming back from the plant I would cross it from the east going west * * * ."

Harry Litchfield, a plaintiff witness, testified on cross-examination: " * * * The track was straight a long distance in a southerly direction. I never noticed a curve in the track, I know there is one there. I do not know that the curve is over 1200 feet south of the crossing. I don't know how many feet it is * * * ."

At the close of all the evidence the defendants moved for judgment as in the case of nonsuit. The lower court allowed the motion on the ground "that the plaintiff's intestate was negligent and that his negligence was one of the proximate causes of his death and that no issue under the doctrine of last clear chance arises upon the evidence * * * ," and entered judgment in accordance therewith. Plaintiff excepts thereto and appeals to Supreme Court, and assigns error.

*Bunn, Hatch, Little & Bunn and Thomas A. Banks for plaintiff, appellant.*

*Smith, Leach, Anderson & Dorsett for defendant appellees.*

WINBORNE, C. J.: The sole question to be decided in case on appeal is whether or not the trial court erred in allowing defendants' motion for nonsuit. Taking the evidence offered upon the trial in the light most favorable to the plaintiff and giving to him the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom, as is done when considering motion for judgment of nonsuit, the conclusion is that the plaintiff's intestate was negligent, as a matter of law, and that his negligence contributed to his untimely death, *Clontz v. Krimminger, ante,* 252, and that the trial court was correct in sustaining defendants' motion for involuntary nonsuit. "Only when plaintiff proves himself out of court is he to be nonsuited on the evidence of contributory negligence." *Lincoln v. RR,* 207 N.C. 787, 178 S.E. 601. See also *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.

In the instant case the evidence of the plaintiff shows that the plaintiff's intestate had full opportunity to observe the train and could have avoided going upon the tracks if he had exercised ordinary care. The plaintiff's evidence shows that an oncoming train could be seen 12 to 15 feet from the tracks as an automobile approaches from the direction in question. Indeed, plaintiff's witness Muldrove testified that he saw the train while 90 feet from the crossing. He testified that he followed the plaintiff's intestate to the crossing and that he saw the train when he was 90 feet from said crossing, and that the de-

ceased stopped the truck close to the tracks, and then drove on to the tracks.

There have been similar railroad crossing cases before the Supreme Court. And in this connection the Court has laid down the following principles of law:

1. In *Coleman v. RR*, 153 N.C. 322, 69 S.E. 251, it is said: "A railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and when the conditions are such that a diligent use of the senses would have avoided the injury, a failure to use them constitutes contributory negligence and will be so declared by the Court. 'In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track, and a failure to do so is contributory negligence which will bar recovery. A multitude of decisions of all the courts enforce this reasonable rule.' There are, of course, exceptions to this, as well as most other rules, but when the traveler can see and won't see he must bear the consequences of his own folly. His negligence under such conditions bars recovery because it is the proximate cause of his injury. He has the last opportunity to avoid injury and fails to take advantage of it."

2. In *Johnson v. RR*, 163 N.C. 431, 79 S.E. 690, it is declared: "On reaching a railroad crossing, and before attempting to go upon the track, a traveler must use his sense of sight and of hearing to the best of his ability under the existing and surrounding circumstances— he must look and listen in both directions for approaching trains, if not prevented from doing so by the fault of the railroad company, and if he has time to do so; and this should be done before he has taken a position exposing him to peril or has come within the zone of danger, this being required so his precaution may be effective."

3. In *Dowdy v. RR & Burns v. RR*, 237 N.C. 519, 75 S.E. 2d 639, "Conceding the existence of negligence on the part of the defendants, which they strenuously deny, this case is controlled by the fact that Dowdy drove his tractor and oil tanker upon the railroad crossing in the face of an oncoming train, which he could have seen in the exercise of ordinary care, if he had looked to the right while he was traveling according to his testimony 25 or 30 feet from the gate to the railroad crossing, or according to actual measurement taken by his witness Rhine 47 feet and 9 inches. If Dowdy had looked to his right while traveling this distance, he could have seen the train and avoided injury. This negligence on Dowdy's part contributed to the injury and damage of all the plaintiffs, and bars recovery, unless

they can bring themselves within the doctrine of last clear chance."

4. In *Godwin v. RR*, 220 N.C. 281, 17 S.E. 2d 137, the Court said: "In approaching a grade crossing both the trainmen and travelers upon the highway are under reciprocal duty to keep a proper lookout and exercise that degree of care which a reasonably prudent person would exercise under the circumstances to avoid an accident. A railroad company is under duty to give travelers timely warning of the approach of its train to a public crossing. Yet its failure to do so does not relieve the traveler of the duty to exercise due care for his own safety, and the failure of a traveler to exercise such care bars recovery, when such failure is a proximate cause of the injury."

5. In *Irby v. RR*, 246 N.C. 384, 98 S.E. 2d 445, it is said: "In the instant case plaintiff knew that he was approaching a railroad, and he knew he was entering a zone of danger. He was required before entering upon the track to look and listen to ascertain whether a train was approaching."

6. In *Beaman v. RR*, 238 N.C. 418, 78 S.E. 2d 182, it is said: "Here the plaintiff was thoroughly familiar with the crossing and the surrounding area. He knew that the tracks to his left curved in a southerly direction. He saw the trees and bushes along the track almost daily. He knew it was a dangerous crossing. It was a clear day and the windows of his automobile were open. He looked to the right and then to the left and there was nothing that he could see coming from the west. He then looked forward and proceeded to cross the track. When he traveled only from seven to nine feet and his right wheel was across the first rail, he saw a train to his left, from 125 to 175 feet from the crossing. Why did he not see the train almost directly in front of him before it had traveled from 125 to 175 feet beyond all obstructions? Was it for the reason he looked once and then looked no more as his evidence seems to indicate?"

7. In *Gray v. RR*, 243 N.C. 107, 89 S.E. 2d 807, it is declared: "In the light of the settled principles of law long prevailing in this State that where a railroad track crosses a public highway, though a traveler and the railroad have equal rights to cross, the traveler must yield the right of way to the railroad company in the ordinary course of its business."

8. In *Parker v. RR*, 232 N.C. 472, 61 S.E. 2d 370, the Court said: "It does not suffice to say that plaintiff stopped, looked and listened. His looking and listening must be timely, *McCrimmon v. Powell, supra*, (221 N.C. 216) so that his precaution will be effective. *Godwin v. RR, supra*. It was his duty to 'look attentively, up and down the

track', in time to save himself, if opportunity to do so was available to him. *Harrison v. RR, supra* (194 N.C. 656); *Godwin v. RR, supra.* Here the conditions were such that by diligent use of his senses he could have avoided the collision. His failure to do so bars his right to recover. *Godwin v. RR, supra.*"

9. And in *Herndon v. RR*, 234 N.C. 9, 65 S.E. 2d 320, it is declared: "Assuming but not deciding that the evidence offered below made out a *prima facie* case of actionable negligence against the defendants, nevertheless, it is manifest from the evidence adduced that the plaintiff's intestate failed to exercise due care under the surrounding circumstances for his own safety and that such failure contributed to, and was a proximate cause of, his death."

Moreover, having decided that plaintiff's intestate was negligent as a matter of law, the doctrine of last clear chance is not applicable. *Redmon v. RR*, 195 N.C. 764, 143 S.E. 829; *Rives v. RR*, 203 N.C. 227, 165 S.E. 709; *Rimmer v. RR*, 208 N.C. 198, 179 S.E. 753; *Stover v. RR*, 208 N.C. 495, 181 S.E. 336; *Reep v. RR*, 210 N.C. 285, 186 S.E. 318; *Lemings v. RR*, 211 N.C. 499, 191 S.E. 39; *Sherlin v. RR*, 214 N.C. 222, 198 S.E. 640.

For reasons stated the judgment below is
Affirmed.

BOBBITT, J., concurring in result. I agree that the evidence, when considered in the light most favorable to plaintiff, establishes the contributory negligence of plaintiff's intestate. This bars recovery unless there is evidence sufficient to entitle plaintiff to invoke the doctrine of last clear chance. Since I find no evidence sufficient to warrant the submission of an issue as to last clear chance, I concur in the result.

My dissent is directed solely to this statement in the Court's opinion: "Moreover, having decided that plaintiff's intestate was negligent as a matter of law, the doctrine of last clear chance is not applicable." Similar statements appear in opinions in prior cases. However, in my view, such statements do not express accurately the intended meaning. In any event, they do not express accurately the correct legal principle.

I understand the oft-used expression, "guilty of contributory negligence as a matter of law," means simply that the evidence, when considered in the light most favorable to plaintiff, establishes plaintiff's contributory negligence. But the legal significance of plaintiff's contributory negligence, whether it appears as a matter of law from the evidence most favorable to plaintiff or is determined by a jury on conflicting evidence, is the same.

The doctrine of last clear chance presupposes the defendant was negligent and the plaintiff was contributorily negligent. *Barnes v. Horney,* 247 N.C. 495, 101 S.E. 2d 315; *Graham v. Atlantic Coast Line R. Co.,* 240 N.C. 338, 82 S.E. 2d 346; *Wade v. Sausage Co.,* 239 N.C. 524, 80 S.E. 2d 150, and cases cited.

"The doctrine of last clear chance, otherwise known as the doctrine of discovered peril, is accepted law in this State. It is this: The contributory negligence of the plaintiff does not preclude a recovery where it is made to appear that the defendant, by exercising reasonable care and prudence, might have avoided the injurious consequences to the plaintiff, notwithstanding plaintiff's negligence; that is, that by the exercise of reasonable care defendant might have discovered the perilous position of the party injured or killed and have avoided the injury, but failed to do so." *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 447, 35 S.E. 2d 337, and cases cited; *Wade v. Sausage Co., supra,* and cases cited.

"To sustain the plea (of last clear chance) it must be made to appear that (1) plaintiff by his own negligence placed himself in a dangerous situation; (2) the defendant saw, or by the exercise of reasonable care should have discovered, the perilous position of plaintiff, (3) in time to avoid injuring him; and (4) notwithstanding such notice of imminent peril negligently failed or refused to use every reasonable means at his command to avoid the impending injury, (5) as a result of which plaintiff was in fact injured." *Ingram v. Smoky Mountain Stages, Inc., supra.*

My view is well expressed in this statement: "The doctrine of last clear chance does not arise until it appears that the injured person has been guilty of contributory negligence, and no issue with respect thereto must be submitted to the jury unless there is evidence to support it." *Irby v. R. R.,* 246 N.C. 384, 390, 98 S.E. 2d 349.

Whether the doctrine of last clear chance is applicable does not depend upon whether the evidence, when considered in the light most favorable to plaintiff, establishes the contributory negligence of his intestate. The doctrine of last clear chance is not applicable here because the evidence was insufficient to support a finding that the defendant saw or should have seen the perilous position in which plaintiff's intestate had, by his own negligence, placed himself, in time to avoid injuring him and under such circumstances failed to exercise reasonable care to avoid the impending injury.

HIGGINS and RODMAN, JJ., join in this opinion.