JONES, JUDGE:
The claimants, T. A. Galyean, Jr., and Ann T. Galyean, are the owners of property located on Crooked Creek Road, Scott Depot, in Putnam County, West Virginia. Mr. Galyean is a licensed architect practicing his profession in the Charleston area. The claimant, John G. Anderson, is the Trustee and Huntington Federal Savings and Loan Association is the Beneficiary of a certain deed of trust securing a loan against said property. For the purposes of this opinion, reference to the claimants, unless otherwise apparent, will apply only to Mr. and Mrs. Galyean. At the time this claim arose, the *122 respondent, Department of Highways, was operating a rock quarry in the vicinity of the claimants’ property.
In June, 1970, the claimants purchased the subject property, being 72 acres of land with a dwelling house and barn, from Otis Wells, a building contractor, for $114,000.00. Mr. Wells built the single family three bedroom dwelling house, of masonry veneer construction with approximately 2,000 square feet of finished living area, in 1964, and lived there until he sold the property to the claimants. He described the house at that time as being “in top shape, just near perfect condition”. As of the time this claim arose, Mr. Galyean described the house as “in immaculate condition and had been recently very well cleaned and painted”. He testified further that between the time he acquired the house and April 27, 1971, there never was any visible damage or cracks in the plaster, foundation, brick work, bathroom tile or any other parts of the structure. The house is located approximately 1,000 feet in a northwesterly direction from the respondent’s quarry at about the same elevation above sea level.
During the early afternoon of April 27, 1971, the respondent’s employees set off a heavy blast at the quarry, vibrations from which severely shook the claimants’ house. Mrs. Galyean was so alarmed that she took her two small children and drove her automobile to the foot of the hill in the direction of the quarry, where she met employees of the respondent who assured her that no further blasts would be set off that day. She was further told that there would be a blast on the following day, but with the charge reduced by one-half the force of that day’s blast. An attempt was made by the claimants to delay further blasting until an investigation could be made, and on the following day while it was thought that a moratorium was in effect and Mr. Galyean was talking on the telephone with the Commissioner of the Department of Highways about having representatives of the respondent on hand as observers during the next blast, another large blast was detonated and the claimants’ home again was shaken. Blasting continued through the summer and fall, but without noticeable effect until December, 1971, when the claimants felt vibrations in the house which they attributed to respondent’s operations.
Mrs, Elaine Bias, whose residence was approximately 600 feet northeast of the respondent’s quarry, testified that in the early after *123 noon of April 27, 1971, a worker at the quarry came to her home and told her that she should leave because a blast was about to be set off. When she refused to leave, the employee said, “Well, go inside and get in a safe place, sit by a middle partition, * * She obeyed instructions and testified that when the blast went off it “shook pictures off the wall, knocked things off the table and some dishes out of the china, off the top of the china, and whatnots off the T.V.”. Mrs. Bias further testified that other than cracks in ceramic tile, no serious damage was sustained until the quarry workings moved nearer to her home in September, 1971, when her water well caved in and the concrete water reservoir was cracked in two places. She was compensated by the respondent for a new well and other damages.
Mr. Galyean outlined the major items of damage to his property as follows: Cracks in exterior brick veneer, crack between the fire box and the walls in the chimney structure, crack above window in the living room, crack in concrete sill at the living room window, break in the garage ceiling, cracks in concrete wall in the garage, tile joint fractures in children’s and master bathroom, and other finer and less noticeable cracks in the interior dry wall. An inspection of the damage on behalf of the respondent was made by E. T. Jarrett, II, and Harold Wolfe on April 28, 1971, and Mr. Jarrett’s report to the respondent described the property damage as “small cracks in walls, ceilings and floors on the inside of the house and cracks in the mortar on the outside of the house”. The Court undertook a view of the premises on June 25, 1974, and a number of items of damage were pointed out. Other alleged damage was no longer subject to view for the reason that certain patching, papering and painting had been done as well as tile in the bathroom replaced.
Mr. Otis Wells, a building contractor for twenty-five years, who, built this house and sold it to the claimants, made an inspection of the premises on April 29, 1971, and testified that at that time the cost of replacement of the damaged house was $16,570.00. Mr. Granville Samuel Elliott, a building contractor for twenty-two years, accompanied the Court on its view during the hearing of this case and thereafter prepared estimates and testified concerning the damages. He used the listing of damages on Mr. Wells’ estimate and countered with a cost of replacement of each item, arriving at a total damage of $3,600.00. The greatest disparity in their estimates *124 had to do with the removing and rebuilding the chimney and the installation of new exterior brick veneer.
The respondent does not deny that the blasting took place and did not produce any evidence directly refuting the claimants’ allegations that the blasting was the proximate cause of at least a portion of the damages complained of. Except for a witness who testified regarding insurance coverage, a matter of little, if any, relevance which will be referred to later in this opinion, the respondent presented only one witness, Mr. Elliott, who testified that most of the alleged damages were minor in nature and that the cracks in brick, ceramic tile, cinder block and dry wall construction which he observed were similar in appearance to those which in his experience he knew to have been caused by natural settlement of a building. Investigators and other employees of the respondent who observed conditions at the claimants’ residence after the blasting were not produced as witnesses.
In the case of Whitney v. Ralph Myers Contracting Corporation, 146 W.Va. 130, 118 S.E. 2d 130, the Supreme Court of Appeals of West Virginia established the rule of absolute liability in blasting cases involving damage by vibrations as well as by casting rocks or other debris. In that case, the Court further approved the language of a Connecticut decision wherein the Court said, “* * * The finding that the blast in question was followed immediately by a marked and noticeable shaking of the plaintiff’s buildings and that cracks then appeared in the exterior and interior plaster is ample under the circumstances to justify the conclusion that the cracks resulted from the blast.” This Court is satisfied that the blasts occurring on April 27 and 28, 1971, and probably subsequent blasts, proximately caused damage to the claimants’ property.
The Court is concerned about the state of the record as regards proof of damages. The law of this State is summarized in Syllabus 3 of the opinion in the case of Joe Konchesky, et al., v. S. J. Groves and Sons Co., Inc., 148 W.Va. 411, 135 S.E. 2d 299, as follows:
“The general rule in determining the amount of damages for injury to real property in a case of this kind is to allow the difference between the market value of the plaintiff’s premises before the injury happened and the market value immdiately after the injury, taking into account only the damage which has re- *125 suited from the defendant’s acts. The reasonable cost of repairs, if properly proved, can be considered as evidence in determining the market value of property after it has been damaged.”
While evidence of damages in this case falls short of that strict requirement, no objection was made during the hearing nor has the point been raised in the respondent’s brief. Realizing the difficulty of strict proof in this case, the Court is inclined to be liberal, and based on its own view of the premises and testimony of construction experts for both the claimants and the respondent with regard to the cost of restoring the property to its value immediately prior to blasting, it is our judgement that the difference in value immediately before and immediately after the blasting occurred may be determined by the Court.
We have considered the respondent’s argument that a compromise settlement between the claimants and their insurance company should reduce or bar recovery in this case. Whatever was done between the claimants and their insurance company was based upon the contract between them. The insurance company is not a joint tort-feasor in this case, and we see no connection between the claimants’ right to recover for injuries inflicted by the respondent and any claim that the claimants may have against a third party by virtue of a contract between them.
The Court has given particular attention to the claimants’ contention that the condition of the chimney is so dangerous as to require removal and rebuilding thereof at a total cost of $4,135.00, and the further claim that it is necessary to remove all exterior brick veneer and replace it with new brick veneer at a total cost of $6,260.00. The respondent’s witness, Mr. Elliott, estimated the cost of the chimney work at $1,600.00, and the brick work at $600.00. The Court is of opinion that the claimants did not prove by a preponderance of the evidence that the complete replacement of the chimney and the exterior brick veneer were necessary to restore the claimants’ property to a reasonably comparable condition existing immediately before the injury.
The Court has given careful consideration to the rights of both parties in this difficult case, and in its opinion, the claimants are entitled to recover the fair amount of their damages. As to the amount, the Court has arrived at a figure which it believes to be *126 fair and equitable; and the Court does hereby award to the claimants, T. A. Galyean, Jr. and Ann T. Galyean, John G. Anderson, Trustee, and Huntington Federal Savings and Loan Association the sum of $7,500.00.
Judge Petroplus participated in the decision of this case, but his resignation from the Court was effective before this opinion was prepared and approved.
Judge Garden did not participate in the decision of this case.
Award of $7,500.00.