## AUGUSTUS DAWSON v. ELIAS ABBOTT.

(Filed 18 October, 1922.)

**Appeal and Error—Reversible Error—Limitation of Actions—Lands—Adverse Possession—Boundaries—Title—Intention—Instructions.**

While the mistake of the owner of land in using and occupying lands beyond his fixed and established boundary line without the intention of claiming more than he has within the acknowledged confines of his deed is not such adverse possession as will ripen his title under our statutes of limitation; this principle does not apply when the owner claims a certain divisional line as his boundary, identifies it as such, and introduces evidence of his possession and claim thereto; and where such appears as the evidence in the case, with further testimony of the claimant, the plaintiff, that he had never intended to hold any land that did not belong to him, but had always claimed the *locus in quo* to the line he claimed as his own, as of right, it is reversible error for the judge to charge the jury on this testimony alone that they should find for the defendant if they should further find that the plaintiff had occupied the land beyond the boundary by mistake, and not intentionally.

APPEAL by plaintiff from *Lyon, J.,* at June Term, 1922, of LENOIR.

This is an action for land. Plaintiff claimed the land by adverse possession under color, as stated, and he testified: "I know the land described in the deed heretofore offered in evidence; it is mine; I have had possession of it and have been cultivating it for about thirty-five or forty years. My line runs, my southern line on the map, as indicated by the yellow line. I have been in possession of the land in dispute for

forty years. There is a branch running from 3 to Mr. Wallace's; the stump there is the corner and has been the corner ever since I bought it thirty-five or forty years ago. Running from the stump to Wallace's land, there is a ditch, and my line runs from there in the deep branch from 3 to 4. I have been cultivating the land in dispute ever since it has been cleared, thirty-five or forty years. I took possession up to the line that I claim now thirty-five or forty years ago. The first time the defendant Abbott claimed to go beyond that dotted line was about six years ago, and he then began to claim it. The defendant Abbott rented the land in controversy from me. He paid the rent and lived in my house. I rented the land to Abbott down to the dotted line on the map, as claimed by me. No one but him ever claimed any of the land down to the dotted line; it is cultivated land and good land."

The plaintiff was asked the following questions:

"Q. In this controversy you have not had any intention to hold any land that did not belong to you? A. I ain't never in my life, and I hope I never will.

"Q. You have not been intending to claim any land that did not actually belong to you? A. No; I always knew where the line was.

"Q. You never claimed any land that did not belong to you? A. No; only claimed what I knew to be my land."

Plaintiff further testified: "This was all one tract before the division. All the other owners on the other side of the line always admitted this stump (corner claimed by plaintiff) to be the corner; Abbott (meaning the defendant) is the first man that raised any question about it."

W. M. Whitley testified: "From what people say, I have known this stump (stump claimed by plaintiff) as a corner stump, and the line as claimed by Dawson as the line; the people have claimed and recognized it as the line and corner for twenty-five years. During all these years the plaintiff, Augustus Dawson, always went up to that ditch as claimed by him and down to that stump indicated on the map. He has worked the land in dispute ever since I have known it. I knew when the defendant Abbott lived in the plaintiff's house, and I think worked up to the stump laid down on the map. The strip in controversy has been cultivated ever since I have known it, a portion of it has been cultivated all these years, for twenty-five years, ever since I have known it."

Collie Fisher testified: "I have known the land in controversy for thirty-five or forty years. Some years ago, I was renting it from Uncle Gus (the plaintiff); the line then was as contended for by him now; I tended it two years, which was eight or ten years ago. Elias Abbott, the defendant, cultivated all of it; I suppose he rented the entire place from the plaintiff."

Augustus Rouse testified: "I know the strip of land in controversy. Augustus Dawson (the plaintiff) has been in possession of that land; he has been tending it for twenty or twenty-five years; no one claimed to the contrary along then; I never saw any one who lived on the other side try to go across the line as claimed by the plaintiff."

The defendant, Elias Abbott, testified: "I rented this tract of land from Uncle Gus (the plaintiff), about six years ago. I have been in possession of the land in dispute now this makes three years. There is a ditch part of the way on the line, as claimed by the plaintiff, toward Wallace's land. Uncle Gus (the plaintiff) was cultivating that all these years up to the ditch. I began to claim across the ditch only three years ago. If the court should allow my contention, it would give me land that I know the plaintiff has been cultivating for a number of years. As tenant of the plaintiff, I held up to that ditch, the line claimed by plaintiff."

Jeff Arnold, for the defendant, testified: "My father owned the property in question. The dividing line between us and the Dawson line was a stump there (witness indicating the stump claimed by the plaintiff to be the corner), and a rod was up there at that time. The plaintiff took in all of this tract of land at one time."

The court charged the jury, among other things, as follows: "Adverse possession, gentlemen of the jury, is such a possession as notifies the true owner and the world that the party in possession is in adverse possession, holding same as his own, so as to enable the true owner, if there be one other than himself, to bring an action. (If a man is mistaken as to where his line is, and gets over the line through mistake, and holds it thinking it is his own when in truth it is not, but without intending to claim beyond the true line, that would not be adverse possession.)"

. Defendant excepted to the portion of 'this instruction which is in parentheses, and assigned the same as error.

Verdict and judgment for the defendant; plaintiff excepted, and appealed.

*Rouse & Rouse for plaintiff.*
*Sutton & Greene for defendant.*

WALKER, J. We have stated so much of the evidence as bears upon the question raised by the plaintiff, who it appears was claiming this land under a deed and adverse possession extending over many years— as much as twenty-five or thirty. The special exception taken by the plaintiff to the charge of the court is that relating to a holding of the land by mistake, the particular instruction being this: "If a man is

mistaken as to where his line is, and gets over the line through mistake, and holds it thinking it is his own when in truth it is not, but without intending to claim beyond the true line, that would not be adverse possession."

This instruction was erroneous in view of the evidence and the contentions of the plaintiff, and was seriously prejudicial to him if it did not turn the scales against him, even if the instruction in itself was correct. The plaintiff did not admit or concede that he ever claimed the land by mistake, and held it thinking it was his own when in truth it was not, and without intending to claim it. The evidence is directly contrary to such a construction of it. Plaintiff claimed the land as his own, without having any doubt about his right and just claim to it, while the charge of the court assumed, or strongly implied, that he was not holding the land adversely, but because of a mistake as to the lines, and that he did not intend to claim land not his own. But this last expression is very far from stating the true contention. Plaintiff did say while testifying that he did not intend to claim any land not rightfully belonging to him, but he added, very distinctly and firmly, and without the slightest equivocation, that he had not done so, but only claimed what he knew to be his land. The charge of the court was obviously calculated, though not, of course, intended, to place a wrong meaning upon what the plaintiff had said, and to produce the impression upon the jury that plaintiff was claiming the land by mistake, and not adversely and of right. The plaintiff had consistently, in the beginning and throughout the case, insisted strenuously that there was no mistake about it, but that he had asserted his title to the land, and his long adverse possession of it by actually occupying it and cultivating it, and using it in other ways to which it was adapted, and this was done for many years, far more than a sufficient time to ripen his title, and there was nothing to justify the court in presenting to the jury a view of the case which implied that plaintiff's possession and claim were asserted by mistake, and therefore not adverse.

It is said in 1 Cyc., at pp. 1036-1038: "A few decisions hold without qualification that one who, through a misapprehension as to the boundaries of his land, occupies and possesses land of another for the statutory period, thereby acquires title by adverse possession to such lands. Nevertheless, according to the great weight of authority, where the occupation of the land is by a mere mistake, and with no intention on the part of the occupant to claim as his own land which does not belong to him, but he intends to claim only to the true line, wherever it may be, the holding is not adverse. In cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period prescribed by the statute of limitations is the

intention of the party holding beyond the true line. It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title, that fixes the character of the entry and determines the question of disseizin. There must be an intention to claim title to all land within a certain boundary, whether it eventually be the correct one or not. Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another, believing it to be his own, up to a mistaken line, claiming title to it and so holding, the holding is adverse, and, if continued for the requisite period, will give title by adverse possession." Applying these principles correctly to the case, the error of the court is apparent.

In *Mode v. Long,* 64 N. C., 433, it was held: "Where one or two coterminous proprietors of land cleared and fenced up to a line of marked trees, believing that to be the dividing line, whereas it was at some points as much as twenty-five yards over upon his neighbor's land: *Held,* that such act constituted an open and notorious adverse possession up to the marked line, and rendered a deed made by the neighbor during such possession, for that part, void." *Chief Justice Pearson* said in the body of the opinion: "In our case, clearing and fencing a field up to a line of marked trees, was certainly an open and notorious act, and the mistake was not in attempting to set a fence with a line, but in asserting another and a different line to be the true one, and making it necessary to have a lawsuit in order to show the mistake and establish the true line. Here the mistake was in regard to which of two lines was the true line of 'Smart's grant,' called for in the deeds of both parties; that depended on a question of law. There the mistake was in running the worm of a fence exactly with a straight line; a mistake as to matter of fact, from inadvertence, and with no intention to assert a claim. So note the diversity." The *Mode case, supra,* controls, except that this is stronger for the plaintiff's right to recover than was the *Mode case.* Here there was no mistake by the plaintiff, because he claimed up to the line which he asserted, all the time, to be the true one. When he said that he would not claim land that did not belong to him, he did not mean that he was doing such a thing, but only claiming that which was his. Even if there had been a mistake originally as to the location of the true line, yet if the plaintiff asserted it to be at a certain place and occupied and claimed up to it in his own right, although he may have been mistaken as to where the true line was, his possession would still be adverse. It was held in *Williams v. Harrell,* 43 N. C., 125: "The fact that the adverse possession has commenced and continued under a mistake as to the rights of the parties is not an avoidance of its legal effect."

The land in dispute contains about fourteen acres, but it is of great value to the plaintiff, and the controversy involves an important principle. The defendant had leased the land from the plaintiff, thereby acknowledging his title, and he must have known that plaintiff had claimed and occupied the land adversely for twenty-five or thirty-five years.

The cross-examination of the plaintiff as to the supposed mistake tended to prejudice him unduly, and to aid greatly in emphasizing the error committed at the trial. The plaintiff was asserting the justness, fairness, and righteousness of his claim, and had his earnest and honest statement of it, inadvertently, of course, but nevertheless strongly, turned to his disadvantage.

We are satisfied that it was the erroneous instruction of the court as to the alleged mistake which misled the jury and caused them to decide with the defendant upon a wrong impression of the case, and for this error plaintiff is entitled to another trial.

New trial.