WALTER C. WALLS AND WIFE, SUSAN B. WALLS v. H. G. GROHMAN AND WIFE, CATHERINE H. GROHMAN

No. 96PA85

(Filed 10 December 1985)

**Adverse Possession § 3— possession under mistake as to true boundary—return to prior rule—overruling of cases**

When a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto, his possession and claim of title is adverse, and if such adverse possession meets all other requirements and continues for the requisite statutory period, the claimant acquires title by adverse possession even though the claim of title is founded on a mistake. This decision returns to the rule applicable in North Carolina prior to 1951 and overrules *Price v. Whisnant*, 236 N.C. 381, 72 S.E. 2d 851 (1952), *Gibson v. Dudley*, 233 N.C. 255, 63 S.E. 2d 630 (1951), and decisions of the Court of Appeals to the extent that they apply a different rule.

ON discretionary review of a decision of the Court of Appeals, 72 N.C. App. 443, 324 S.E. 2d 874 (1985), affirming a judgment for the plaintiffs entered 21 February 1984 in the District

Court, NEW HANOVER County. Heard in the Supreme Court on 15 October 1985.

*Carr, Swails and Huffine, by James B. Swails, for plaintiff-appellees.*

*Addison Hewlett, Jr. and John F. Crossley for defendant-appellants.*

BILLINGS, Justice.

Plaintiffs instituted this action to remove a cloud on the title to their property, the cloud being the defendants' claim to a fifty plus-foot-wide strip along the northern side of the property. The defendants claim the disputed strip by adverse possession.

The matter was submitted to a referee, but the first referee's report was set aside for failure of the referee to conduct a hearing. In a second report, after a hearing, the referee found that the plaintiffs had record title to the strip in question but that the defendants had acquired title by adverse possession for not less than twenty years. The plaintiffs filed exceptions to the referee's report. Following a hearing on the exceptions, Judge Tucker concluded that the report and order did not correctly apply the law of North Carolina. He therefore entered judgment for the plaintiffs, and the defendants appealed to the Court of Appeals, which affirmed the judgment.

All parties' claims of title derive from Mrs. Kittie Horne Lewis and husband, Henry G. Lewis. The defendants have claimed title since 28 October 1948 when Kittie Horne Lewis and Henry G. Lewis deeded to defendant Catherine H. Grohman a tract of land adjoining the disputed strip. Catherine Grohman thought the tract included the disputed strip.

As found by the referee, the plaintiffs' chain of title is a series of deeds as follows:

a) Kittie Horne Lewis and husband, Henry G. Lewis, to Bruce Lewis dated 21 June 1949.

b) Bruce Lewis and wife, Viola F. Lewis, to Paul Griffin, Jr. and wife, Amanda Griffin, dated 17 December 1955.

c) Amanda Griffin, widow, to Walter C. Walls and wife, Susan B. Walls, dated 9 November 1979.

The referee's finding numbered I 9 contains the following:

The Plaintiffs, although junior in time, have the better *record* title to that portion of land in dispute between them and the lands of the Defendants. (Emphasis in original.)

According to the referee's findings, the common source, Mrs. Kittie Horne Lewis and her husband, divided certain property known as Tract #5 of the Horne Division among five children, two of whom were defendant Catherine H. Grohman and Bruce Lewis, plaintiffs' predecessor in title. Tract #5 measured 1,083 feet on its eastern side, which bordered on the right-of-way of "New Federal Point Road," presently State Road 1492 and called Myrtle Grove Loop Road. The conveyances, which were intended to convey the entire Tract #5, were, in chronological order, as follows:

| Date | Grantee | Road Frontage |
|------|---------|---------------|
| 17 December 1945 | Alma Lewis Rouse | 256 feet |
| 18 June 1946 | Andrew F. Dicksey | 131 feet |
| 8 December 1947 | Phoenix T. Dicksey | 190 feet |
| 28 October 1948 | Catherine H. Grohman | 242 feet |
| 21 June 1949 | Bruce Lewis | 212 feet |
| | | 1,031 feet |

Note that the road frontage of the lots actually conveyed totals 1,031 feet, or 52 feet less than the total of Tract #5.

The beginning point of defendant Catherine Grohman's deed is 256 feet along the road south of the northeast corner of the tract, the point which corresponds to the southeast corner of the tract earlier conveyed to Alma L. Rouse. The Grohman deed then calls for a distance along the road of 242 feet. The Grohmans claim that their tract actually extends to a point 293-plus feet along the road from the beginning point, and that the deed conveys almost 52 feet less than they claim and than was intended.

The deed to Bruce Lewis calls for a beginning point at the Grohman southeast corner and runs along the road to the northeast corner of the property previously conveyed to Phoenix T.

Dicksey. The deed to Lewis states that distance as 212 feet; however, the distance between the *actually* conveyed Grohman tract and the Phoenix T. Dicksey tract is 266 feet, or 54 feet more than the deed to Lewis indicates. Thus, if the call had begun at the southeast corner of Bruce Lewis' tract, corresponding to the northeast corner of the Phoenix T. Dicksey tract, and run 212 feet north along the road, the resulting point would not be the southeast corner of the property described in the deed to the defendant Catherine H. Grohman, but would be slightly south of the southeast corner as *claimed* by the defendants.

The defendants contend that Catherine Grohman's parents intended to convey to her a tract of land which included the disputed strip. The referee's findings include the following:

Mrs. Grohman does not know what road frontage distance her deed called for, but claims all lands to a stake her father showed her at the east terminus of the hedgerow, and running westerly toward the walnut tree. Neighbors and former employees of Griffin and Grohman agree to knowledge of that line as being the Grohman line.

Other findings of the referee further supported his conclusions that:

3. Mrs. Catherine H. Grohman has been in exclusive possession of that part of the Walls tract south of the line called for in her deed under a claim of right and title up to a point which runs south 26 degrees 54 minutes west from the Rouse southeast corner along the old right of way of the road for a distance of 293.6 feet, and extending westerly, north 48 degrees 3 minutes west 1,411 feet to an old iron in a ditch.

4. Such possession by the Grohmans has been actual, open, hostile, exclusive and continuous for a period of more than thirty years before the Plaintiffs were conveyed their tract. The possession has been characterized as that of an owner exercising exclusive dominion over the lands now in dispute up to a marked and known line in making such use of the land as it is reasonably susceptible of in its condition.

The referee then ordered that the disputed land, north of a line described in the order as the division line between the lands of the plaintiffs and the defendants, was the plaintiffs' land.

The District Court Judge found that the referee had incorrectly applied North Carolina law relating to adverse possession and ordered title to the disputed land quieted in plaintiff. The trial judge's order contains, *inter alia*, the following:

It was testified to by Mrs. Grohman, one of the Defendants, that when the family division of the property of her mother and father was made, that it was her understanding that her land went to an iron stake and that it was her understanding that the property conveyed to her by her mother included the lands and premises which are the subject of this action. This testimony was apparently the basis of a conclusion by the Referee that the property claimed by Mrs. Grohman was within the boundaries of lands believed and claimed to be theirs as a matter of right and title from and after the deed to Mrs. Grohman from her mother. Item #3 under the Referee's Conclusions of Law finds that Mrs. Grohman has been in exclusive possession of that part of the Wall's tract south of the line called for in her deed under "a claim of right and title." *This finding is indicitive [sic] of a possession on the part of the Defendants which was not adverse, as adverse possession is defined under the laws of the State of North Carolina, but that the Defendant was under the impression that she was occupying property of her own and was claiming only to a line which she believed* to be a boundary of the lands conveyed to her by her parents. This contention of the Defendants is amply described under Section III Possession of the Disputed Area-Item 3 of the Referee's report and finding. It is plain from the findings of the referee that the contentions of the Defendants were that they believed the land claimed by them under a claim of adverse possession was land encompassed by the description in the deed given to Mrs. Grohman by her parents and recorded in Book 429, at Page 263. It is quite clear from the testimony of the Defendants and their witnesses that the Defendants occupied such portions of the land under controversy as were occupied by them, under the belief that they were asserting possession over lands conveyed to Mrs. Grohman by her parents and that such lands were encompassed in the boundaries of the deed to them. *Under the law of North Carolina this posses-*

*sion does not meet the test of adverse possession as decided by the Courts of this State.* (Emphasis in original.)

The Court of Appeals agreed with the District Court's application of the law of adverse possession, citing *Sipe v. Blankenship*, 37 N.C. App. 499, 246 S.E. 2d 527 (1978), *cert. denied*, 296 N.C. 411, 251 S.E. 2d 470 (1979); *Price v. Whisnant*, 236 N.C. 381, 72 S.E. 2d 851 (1952) and *Garris v. Butler*, 15 N.C. App. 268, 189 S.E. 2d 809 (1972). We allowed the defendants' petition for discretionary review of the decision of the Court of Appeals which held:

> there was sufficient evidence from which the district court could find and conclude that defendants exercised possession over the disputed area solely because they believed that it was in fact their land and that it was included in the description contained in their deed. Such possession may not be considered adverse.

72 N.C. App. at 449, 324 S.E. 2d at 877-78.

We reverse.

There is no question that for years the law in North Carolina has been understood as described in the following quotation from Hetrick, *Webster's Real Estate Law In North Carolina* § 293, (rev. ed. 1981):

> Contrary to the weight of American authority, a conscious intention to claim title to the land of the true owner is required to make out adverse possession in North Carolina if there is no color of title. In this state, if the possession is by mistake due to a mistaken boundary, or if the possession is equivocal in character, and without color of title, it is not adverse. The existence of mistake negates the requisite intent to establish adverse possession.

*Id.* at 320.

The quotation from Hetrick is supported by citations beginning with *Gibson v. Dudley*, 233 N.C. 255, 63 S.E. 2d 630 (1951). However, prior to that case, the North Carolina law clearly had been contra.

In the 1922 case of *Dawson v. Abbott*, 184 N.C. 192, 114 S.E. 15, this Court awarded a new trial to the plaintiff because the

trial judge instructed the jury: "If a man is mistaken as to where his line is, and gets over the line through mistake, and holds it thinking it is his own when in truth it is not, but without intending to claim beyond the true line, that would not be adverse possession." *Id.* at 194-95, 114 S.E. at 16. The Court said that even if that instruction was a correct statement of the law, it was error for the trial court to give it in view of the evidence in the case. The Court then summarized the plaintiff's testimony as follows:

> Plaintiff did say while testifying that he did not claim any land not rightfully belonging to him, but he added, very distinctly and firmly, and without the slightest equivocation, that he had not done so, but only claimed what he knew to be his land.

*Id.* at 195, 114 S.E. at 16. The following passage from 1 Cyc. pp. 1036-1038 was then quoted and applied as the law of this state:

> It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title, that fixes the character of the entry and determines the question of disseizin. There must be an intention to claim title to all land within a certain boundary, whether it eventually be the correct one or not. Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another, believing it to be his own, up to a mistaken line, claiming title to it and so holding, the holding is adverse, and, if continued for the requisite period, will give title by adverse possession.

*Id.* at 196, 114 S.E. at 16.

The general rule throughout the United States regarding possession under mistake or ignorance is as stated in the following quotation from 3 Am. Jur. 2d *Adverse Possession* § 41 (1962):

> It is a widely accepted rule that where one, in ignorance of his actual boundaries, takes and holds possession by mistake up to a certain line beyond his limits, upon the claim and in the belief that it is the true line, with the intention to claim title, and thus, if necessary, to acquire "title by possession" up to that line, such possession, having the requisite duration and continuity, will ripen into title. Thus, the mere fact that the possession originated in a mistake or in ig-

norance as to the location of the true boundary line will not prevent the running of the statute of limitations, for if the person in possession intends to claim the land to the line occupied by him as his own and his possession of it is open and exclusive for the statutory period, such possession will be held to be adverse and to vest the title in him under the statute, even though the land was not inclosed. But if, on the other hand, a party, through ignorance, inadvertence, or mistake, occupies up to a given line beyond his actual boundary, because he believes it to be the true line, but has no intention to claim title to that extent if it should be ascertained that such line is on his neighbor's land, an indispensable element of adverse possession is wanting. In such a case, the intent to claim title exists only upon the condition that the line acted upon is, in fact, the true line. The intention is not absolute, but provisional, and consequently, the possession is not adverse. Thus, where the possession is up to a fixed boundary under a mistake as to the true line and the intention is to hold only to the true line, such possession is not hostile and will not ripen into title. The gist of the cases is that merely claiming land to a boundary, believing it to be the true line, is not sufficient to constitute a basis for a claim by adverse possession, since the claim of right must be as broad as the possession.

Where an occupant of land is in doubt as to the location of the true line it is reasonable to inquire as to his state of mind in occupying the land in dispute, and if, having such doubt, he intends to hold the disputed area only if that area is included in the land described in his deed, then it is reasonable to say that the requisite hostility is lacking; but if the occupation of the disputed area is under a mistaken belief that it is included in the description in his deed—a state of mind sometimes described as pure mistake to distinguish it from the cases of conscious doubt—then his possession is adverse.

*See also* 80 A.L.R. 2d 1161, § 3 (1961).

The case of *Gibson v. Dudley,* 233 N.C. 255, 63 S.E. 2d 630 (1951) seems to have intended to apply the above-quoted rule, for there the Court said that the plaintiff's evidence was insufficient

to support adverse possession because "he was not claiming it as against the true owner when he first discovered the error and went to see the defendant and then his own lawyer about fixing up papers to make it a joint driveway. Prior to this time, 'he did not intend to usurp a possession beyond the boundaries to which he had a good title.' *Bynum v. Carter*, 26 N.C. 310." *Id.* at 257, 63 S.E. 2d at 631. However, the Court went on to say: "His claim then was not one of adverse possession but one of rightful ownership. If his possession were exclusive, open and notorious, as he now contends, no one regarded it as hostile or adverse, not even the plaintiff himself, for he was not conscious of using his neighbor's land. 'I thought all the time it was mine.' " *Id.* at 258, 63 S.E. 2d at 631.

The next year in *Battle v. Battle*, 235 N.C. 499, 70 S.E. 2d 492 (1952) plaintiffs James H. Boddie and Julia Boddie Galloway's claim of title to certain property was dependent upon the adverse possession of their parents, Arcenia and Julius Boddie. The plaintiffs' contention and evidence was that when Arcenia Boddie's mother conveyed certain property to Arcenia and Julius Boddie, the disputed property, lot 817, was inadvertently omitted from the deed. In affirming judgment for the plaintiffs this Court said:

The evidence of the investiture of Arcenia Boddie and her husband in possession of this lot and of the execution of a deed intended by the owner to convey it to them, was properly submitted to the jury to be considered with the other evidence of continuous and exclusive occupancy in the support of plaintiffs' contention that possession thereafter by them and those to whom their right descended was adverse, and that it was maintained with intent to claim against the former owner and all other persons.

*Id.* at 501, 70 S.E. 2d at 494.

However, a few months later in *Price v. Whisnant*, 236 N.C. 381, 72 S.E. 2d 851 (1952) this Court relied upon *Gibson* in concluding that adverse possession was not established. The Court in *Price* for the first time announced and applied the rule that has been followed since that time:

The plaintiff makes it clear that when he went into possession of the Broyhill tract of land he intended to claim only

---

---

the land described in his deed from Broyhill and he thought his deed covered the disputed area. There was no occasion for any change in his belief prior to his discovery in 1921 that the land now in dispute was not covered by his deed. *As a consequence, so long as he thought his deed covered the disputed area, his possession was not adverse but a claim of rightful ownership.* (Emphasis added.)

. . .

Therefore, no act of the plaintiff, however exclusive, open and notorious it may have been prior to the time he discovered the area now in dispute was not covered by the description in his deed, will be considered adverse.

*Id.* at 385, 72 S.E. 2d at 854.

The Court of Appeals has relied upon and repeated the rule stated in *Gibson* as amplified in *Price* in the later cases of *Garris v. Butler*, 15 N.C. App. 268, 189 S.E. 2d 809 (1972); *Sipe v. Blankenship*, 37 N.C. App. 499, 246 S.E. 2d 527 (1978), *cert. denied*, 296 N.C. 411, 251 S.E. 2d 470 (1979) and the instant case. The rule was stated in *Garris* as follows:

Where as here, a grantee goes into possession of the tract of land conveyed to him and also a contiguous tract not included in the conveyance under the mistaken belief that the contiguous tract was included within the description in his deed, no act of such grantee, however exclusive, open and notorious will constitute adverse possession of the contiguous tract so long as he thinks his deed covers the contiguous tract, since there is no intent on his part to claim adverse to the true owner.

15 N.C. App. at 270-71, 189 S.E. 2d at 810-11.

The rule as applied in the more recent North Carolina cases has been criticized as rewarding only the claimant who is a thief.[1]

---

1. This view "not only confers a premium upon conscious wrongdoing, but introduces into the law of adverse possession a requirement never otherwise asserted. Under such a rule there could be no adverse possession unless the possessor had the intention of claiming the land if his title is defective. Ordinarily a person who believes that he owns certain land, or land up to a certain boundary, has no thought as to what he will do if he is mistaken. Even assuming that he has an intention, such intention is necessarily difficult, and frequently impossible, of determination. If his own testimony concerning his motive is accepted a premium is placed on perjury." *Tiffany on Real Property*, § 551 (abr. 3rd ed. 1970).

We have concluded that a rule which requires the adverse possessor to be a thief in order for his possession of the property to be "adverse" is not reasonable, and we now join the overwhelming majority of states, return to the law as it existed prior to *Price* and *Gibson*, and hold that when a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto, his possession and claim of title is adverse. If such adverse possession meets all other requirements and continues for the requisite statutory period, the claimant acquires title by adverse possession even though the claim of title is founded on a mistake. We therefore overrule *Price v. Whisnant*, 236 N.C. 381, 72 S.E. 2d 851 (1952); *Gibson v. Dudley*, 233 N.C. 255, 63 S.E. 2d 630 (1951); *Sipe v. Blankenship*, 37 N.C. App. 499, 246 S.E. 2d 527 (1978), *cert. denied*, 296 N.C. 411, 251 S.E. 2d 470 (1979); and *Garris v. Butler*, 15 N.C. App. 268, 189 S.E. 2d 809 (1972) to the extent that they apply a different rule.

Applying this rule to the facts before us, it is clear that the referee's findings support a conclusion that the defendants have acquired title to the disputed tract by adverse possession for more than twenty years.

Therefore, we reverse the Court of Appeals and remand this case to the Court of Appeals for further remand to the District Court of New Hanover County for entry of judgment in accordance with the referee's report.

Reversed and remanded.