CAROLYN AVERITT LANCASTER, CHARLES S. FOX, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF CORNELIA AVERITT FOX, DECEASED, JANE GREGG DERBY, SABRA GREGG CAMPBELL AND MARY MAC GREGG WILKINSON, PLAINTIFFS V. MAPLE STREET HOMEOWNERS ASSOCIATION, INC., A NONPROFIT NORTH CAROLINA CORPORATION, DEFENDANT

No. COA02-666

(Filed 18 March 2003)

**1. Appeal and Error— extension of time to file record on appeal—failure to object—death of trial judge**

The Court of Appeals exercised its discretionary authority under N.C. R. App. P. 2 to hear the appeal in an adverse possession case even though the trial court did not have authority to extend the time for plaintiffs to file the record on appeal by forty-five days, because: (1) defendants failed to object to the extension at the time and did not contest the extension in their objections to the proposed record on 18 January 2002; (2) plaintiffs complied with the order of the trial court and timely filed the record according to the order; and (3) there was an intervening death of the trial judge.

**2. Deeds— language not patently ambiguous—extrinsic evidence**

The trial court erred in an adverse possession case by granting defendants' motion in limine and ruling that a portion of the pertinent 1931 deed referring to three vacant lots of a subdivision was patently ambiguous, because: (1) the reference in the deed is sufficient for plaintiffs to present extrinsic evidence to attempt to prove that the disputed property was located within the three vacant lots of the 1931 deed and was subsequently conveyed by the 1941 deed; (2) defendants are free to present evidence that the disputed property had previously been legally conveyed or did not otherwise pass through the 1931 deed; and (3) plaintiffs' objection to the trial court's grant of the motion in limine preserved this issue for appeal.

**3. Adverse Possession— directed verdict—continuous, actual, and open possession—hostility—privity and tacking**

The trial court did not err by denying plaintiffs' motion for directed verdict under N.C.G.S. § 1A-1, Rule 50(a) on the issue of defendant's adverse possession, because: (1) defendants presented sufficient evidence of continuous, actual, and open pos-

session of the land; (2) defendants presented sufficient evidence of the requisite hostility from 1992 through the date this action was filed; (3) defendants presented sufficient evidence of privity and tacking to satisfy the requisite statutory period of twenty years; and (4) nothing in our case law prevents multiple people from claiming ownership by tenancy in common against the true owner, and these multiple claimants could transfer their respective interests as tenants in common to a successor entity as was done here.

Judge HUNTER concurring in part and dissenting in part.

Appeal by plaintiffs from judgment entered 13 August 2001 and filed 14 August 2001 by Judge Dexter Brooks in Columbus County Superior Court. Heard in the Court of Appeals 8 January 2003.

*Mitchell, Brewer, Richardson, Adams, Burge & Boughman, by Ronnie M. Mitchell and Coy E. Brewer, Jr., for plaintiffs-appellants.*

*Michael W. Willis for defendant-appellee.*

TYSON, Judge.

Carolyn Lancaster et al. ("plaintiffs") and Maple Street Homeowners Association, Inc. ("defendant") both claimed ownership to real property located in Columbus County ("disputed property"). On 13 August 2001, a jury determined that defendant acquired title to the disputed property by adverse possession. Plaintiff appeals. We affirm in part, reverse in part, and remand for a new trial.

## I. Background

In 1900, John P. Council, Jr. acquired by deed a tract of land containing approximately 925 acres in Columbus County from Robb L. Bridger and wife, Emma, that included the disputed property. This deed is recorded at Book QQ, Page 355, Columbus County Registry. John P. Council, Jr. died intestate in 1929. On 28 February 1931, his heirs-at-law conveyed their interests in the property to Estate of J. P. Council, Inc., a North Carolina corporation. This deed is recorded at Book 139, Page 392, Columbus County Registry. This deed described five tracts by metes and bounds and a sixth "catch all" description of "Any right, title, or interest which J. P. Council, late of Columbus County, have had in any other real estate in Columbus County." The

"First Tract" set forth a description of approximately 686 acres of property. Following that description, the deed stated:

> This description is intended to cover all of that tract of land known as the J. P. Council farm and to include three vacant lots of a subdivision of the property by J. P. Council on the north shore of Waccamaw Lake, provided these lots have not previously been legally conveyed and which three lots are not included in the boundary recited above.

After the description of the "Third Tract", the deed stated:

> For further description of the above three tracts, See records of Columbus County, Book QQ, page 355,56,57, which covers a tract of land deeded to J. P. Council by R. L. Bridger, from which tract conveyances have been made to J. Sam Wright, A. I. Smalley, The Council Tool Company, A.J. Edwards, J. A. Powell, et al.

On 5 April 1941, the Estate of J.P. Council, Inc. conveyed to K. Clyde Council real property in Columbus County. The 1941 deed contained a metes and bounds description of the property conveyed and excepted two tracts of land. It further provided:

> The above description is intended to cover all of that tract of land known as the J. P. Council farm and referred to as the first tract in a conveyance from E. B. Council and others to the [Estate of J.P. Council, Inc.], recorded in Book 139, Page 392, Registry of Columbus County.

After K. Clyde Council died, his interest in the real property passed to plaintiffs.

The disputed property is located on and near the shore of Lake Waccamaw and on both sides of and at the end of Maple Street in three separate areas: (1) a strip north of Lake Shore Drive and south of the Hall's lot between Lot No. 4 of the J.P. Council Subdivision and Maple Street; (2) a strip north of Lake Shore Drive between Maple Street and Lot No. 5 of the J.P. Council Subdivision; and (3) south of Lake Shore drive and north of the north shore of Lake Waccamaw between Lot No. 4 and Lot No. 5 of the J.P. Council Subdivision.

Several families residing on Maple Street began using the disputed property in the 1950's for family recreational and social activities and for access to the lake. The families installed wooden posts along the lakeside property to prevent parking and littering. They maintained the property by cutting trees and removing them, cut-

LANCASTER v. MAPLE ST. HOMEOWNERS ASS'N

[156 N.C. App. 429 (2003)]

ting the grass, planting trees and shrubbery and generally maintained the landscape. The families built steps leading from the shore to the lake, placed picnic tables on the disputed property, and installed "Private Parking" signs on the disputed property. Vernon Hall testified that she thought of the disputed property as an extension of her own property.

Until 1992, some of the families along Maple Street believed that the property was owned by the Town of Lake Waccamaw. On 11 May 1993, the Town Council adopted a resolution which denied any ownership of the disputed property. After the town's resolution, the families deeded their interests in the property to defendant by quitclaim deeds. Defendant has paid the *ad valorum* property taxes on the disputed property since 1993.

Plaintiffs sued for trespass, injunction, and a determination of ownership of the disputed property. Defendant answered and asserted that it owned the property through adverse possession. The jury determined plaintiffs did not have record title to the disputed property and defendant owned the property through adverse possession. Plaintiffs appeal.

## II. Issues

Plaintiffs contend that the trial court erred (1) in ruling that a portion of the 1931 deed was patently ambiguous; (2) in denying plaintiffs' motion for directed verdict on the issue of defendant's adverse possession; and (3) in allowing the cross-examination of witnesses regarding a change in plaintiffs' legal theory following a ruling on defendant's motion in limine.

## III. Motion to Dismiss Appeal

[1] Defendant filed a motion to dismiss the appeal. Defendant contends that appellants' proposed record on appeal was served contrary to the Rules of Appellate Procedure and is subject to dismissal.

Rule 11(b) of the North Carolina Rules of Appellate Procedure provides that the appellant must serve the proposed record on appeal on the appellee "[w]ithin 35 days after the reporter's or transcriptionist's certification of delivery of the transcript, if such was ordered . . ., or 35 days after filing of the notice of appeal if no transcript was ordered." Rule 27(c)(1) states that the trial court "for good cause shown by the appellant may extend once for no more than 30 days the time permitted by Rule 11 or Rule 18 for the service of the

proposed record on appeal." All other motions for extensions of time "may only be made to the appellate court to which appeal has been taken." N.C. R. App. P. 27(c)(2) (2002). If the appellee objects to the filing of the proposed record, it has 21 days to "serve upon all other parties specific amendments or objections to the proposed record on appeal, or a proposed alternative record on appeal." N.C. R. App. P. 11(c). Within 10 days, the appellant may request the judge whose order is being appealed to settle the record on appeal. N.C. R. App. P. 11(c). "The hearing [to settle the record on appeal] shall be held not later than 15 days after service of the request for hearing upon the judge. The judge shall settle the record on appeal by order entered not more than 20 days after service of the request for hearing upon the judge." N.C. R. App. P. 11(c).

The trial court granted plaintiffs an extension of 45 days to submit a proposed record on appeal without objection from defendant. Plaintiffs complied with the trial court's order and submitted its proposed record on the 45th day. Defendant objected to the content of the proposed record. Because the original trial court judge had died, a new judge was appointed. Ultimately, the record on appeal was settled 74 days after the appointment of the new judge.

Although the trial court did not have the authority to extend the time for plaintiffs to file the record on appeal by 45 days, defendants failed to object to the extension at the time and did not contest the extension in their objections to the proposed record on 18 January 2002. Plaintiffs complied with the order of the trial court. In light of the intervening death of the trial judge and the timely filing of the record according to the order, we exercise our discretion to hear this case under Rule (2) of the North Carolina Rules of Appellate Procedure in the interests of justice.

## IV. Plaintiffs' Record Ownership

[2] The trial court determined, in defendant's motion in limine, that the words "and to include three vacant lots of a subdivision of the property by J. P. Council on the north shore of Waccamaw Lake, provided these lots have not previously been legally conveyed. . . ." in the 1931 deed were "patently ambiguous." Plaintiffs were not allowed to present extrinsic evidence to show record title ownership to the property through that language of the 1931 deed and the subsequent 1941 deed. The trial court instructed the jury that it could not find the disputed property was located within the boundaries of the "three vacant lots." Plaintiffs contend the trial court erred in granting

defendant's motion in limine, excluding the evidence, and instructing the jury. We agree.

Language in an agreement is patently ambiguous and unenforceable only if the "terms of the writing leaves the subject of the contract, the land, in a state of absolute uncertainty, and refer to nothing extrinsic by which it might possibly be identified with certainty." *Lane v. Coe*, 262 N.C. 8, 13, 136 S.E.2d 269, 273 (1964) (citing *Gilbert v. Wright*, 195 N.C. 165, 141 S.E. 577 (1928)). If the description "refers to something extrinsic by which identification might possibly be made" even though it is insufficient in itself to identify the property, only a latent ambiguity is present and parol or other evidence may be used to identify the property. *Id.*

The 1931 deed clearly references the subdivision of J. P. Council and the north shore of Lake Waccamaw. The deed further references the prior deeds and recordings by its statement after the "Third Tract". This reference is sufficient for plaintiffs to present extrinsic evidence to attempt to prove that the disputed property was located within the "three vacant lots" of the 1931 deed and was subsequently conveyed by the 1941 deed. We hold the trial court erred in finding the 1931 deed patently ambiguous and granting defendant's motion in limine. Defendants are free to present evidence that the disputed property had "previously been legally conveyed" or did not otherwise pass through the 1931 deed.

Defendants contend that such error is harmless because the property was not conveyed to K. Clyde Council in the 1941 deed, the source of plaintiffs' claim to the property. If the property was not conveyed in the 1941 deed, the property remained in the Estate of J. P. Council, Inc. which has since dissolved. The 1941 deed set forth a metes and bounds description which all parties concede does not include either the subject land or the "three vacant lots" from the "First Tract" of the 1931 deed. The deed recited that the metes and bounds description "intended to cover" all of the J.P. Council farm "and referred to as the first tract" in the 1931 deed. Plaintiffs contend they received their record ownership of the property because the 1941 deed intended to convey the entire "First Tract" of the 1931 deed which may include the subject property within the three vacant lots. We hold that the 1941 deed description was sufficient to convey the entire "First Tract" of the 1931 deed including the "three vacant lots." We express no opinion on whether the disputed property is located in or is a part of the "three vacant lots."

## V.  Waiver

Defendant contends plaintiffs have waived their right to appeal the issue of the granting of the motion in limine because of their concessions at trial. Prior to trial, Judge Brooks heard arguments on the motion to amend the complaint and the motion in limine in chambers without the court reporter present. In the record, defendant's counsel stated the trial court "ruled on those two motions in chambers after we each had our chance to have our say-so about those motions. We, in fact, agreed to the motion to amend and [counsel for plaintiffs] conceded, as I recall, that he didn't—he didn't have any way to fight my motion." The trial court stated that plaintiffs conceded they did not have any legal basis to oppose the motion. At the close of all evidence, plaintiffs argued that, based on the evidence presented, the trial court should reconsider its grant of the motion in limine and allow plaintiffs to present evidence to the jury regarding the "three vacant lots" in the 1931 deed. The trial court responded, "The Court, upon reviewing the exhibit, chooses not to change its ruling." Plaintiffs objected to the trial court's grant of the motion in limine. This preserves the issue for appeal.

We hold the trial court erred in granting the motion in limine which found the language of the 1931 deed "patently ambiguous" and denying plaintiffs the opportunity to present evidence of whether the "three vacant lots" described in the 1931 deed included the disputed property.

## VI.  Adverse Possession

[3] Plaintiffs contend that the trial court erred in denying its motion for a directed verdict on the issue of adverse possession.

> [A] motion . . . for a directed verdict under N.C.G.S. § 1A-1, Rule 50(a) of the Rules of Civil Procedure tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the [non-moving party]. A [party] is not entitled to a directed verdict or a judgment notwithstanding the verdict unless the evidence, viewed in the light most favorable to the [non-moving party], establishes its defense as a matter of law.

*Goodwin v. Investors Life Insurance Co. of North America*, 332 N.C. 326, 329, 419 S.E.2d 766, 767 (1992) (citing *Kremer v. Food Lion, Inc.*, 102 N.C. App. 291, 401 S.E.2d 837 (1991); *Arnold v. Sharpe*, 296 N.C. 533, 251 S.E.2d 452 (1979); *Husketh v. Convenient Systems*, 295 N.C. 459, 245 S.E.2d 507 (1978)). If more than "a scintilla of evidence" sup-

porting each element of the case exists, motions for directed verdict should be denied. *Clark v. Moore*, 65 N.C. App. 609-10, 309 S.E.2d 579, 580-81 (1983).

To prove adverse possession, defendants must show "actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period (seven years or twenty years) under known and visible lines and boundaries." *Merrick v. Peterson*, 143 N.C. App. 656, 663, 548 S.E.2d 171, 176, *disc. rev. denied*, 354 N.C. 364, 556 S.E.2d 572 (2001) (citing *Curd v. Winecoff*, 88 N.C. App. 720, 364 S.E.2d 730 (1988)).

### A. Actual, Open, and Continuous

Since the 1950's, the families on Maple Street continuously used and openly placed items such as tables, permanent steps, chairs, play equipment, fire pits, grills, and private parking signs on the property. The families also performed yard work, installed wooden posts, and asked strangers to leave the disputed property. Defendant presented sufficient evidence of continuous, actual, and open possession of the land to survive plaintiffs' motion for a directed verdict.

### B. Hostile

Our Courts have long recognized that the party asserting the adverse possession claim must prove that their taking and possessing the land of another was hostile. Prior cases have looked to the intent of the party claiming the property to determine whether the required hostility was satisfied. Before 1985, our Courts held that to prevail on a claim under adverse possession, the party must have the mind of a thief. *Walls v. Grohman*, 315 N.C. 239, 244-46, 337 S.E.2d 556, 559-60 (1985). Possession was not adverse if a party possessed land under a mistake as to ownership and without color of title. *Id.* In *Walls*, our Supreme Court overruled the prior law and stated:

> a rule which requires the adverse possessor to be a thief in order for his possession of the property to be "adverse" is not reasonable, and we now join the overwhelming majority of states, return to the law as it existed prior to *Price* and *Gibson*, and hold that when a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto, his possession and claim of title is adverse. If such adverse possession meets all other requirements and continues for the requisite

statutory period, the claimant acquires title by adverse possession even though the claim of title is founded on a mistake.

*Id.* at 249, 337 S.E.2d at 562. If the possessor harbors a conscious doubt as to the true ownership of the land, "it is reasonable to inquire as to his state of mind in occupying the land in dispute." *Id.* at 246, 337 S.E.2d at 560. In *Sebrell v. Carter*, 105 N.C. App. 322, 413 S.E.2d 1 (1992), our Court upheld a jury instruction which stated:

> [T]he possession must have been with an intent to claim title to the land occupied. A conscious intention to claim title to the land of the true owner is necessary to make out adverse possession. If the defendants acted under a mistake as to [the] true boundary between their property and that of the plaintiffs', then possession under mistake may satisfy this element if all other elements of their claim have been satisfied. But if they consciously [doubted] that title *and for a portion of the period did not intend to claim title then their possession is not adverse.* (emphasis supplied) (changes in the original).

105 N.C. App. at 324, 413 S.E.2d at 1-2. In the later case of *Enzor v. Minton*, 123 N.C. App. 268, 472 S.E.2d 376 (1996), our Court held:

> where adverse possession originates in mistake but then, upon discovery of the mistake by the adverse possessor, is perpetuated by conscious intent, the uninterrupted periods of adverse possession may be tacked together and considered as one for the purpose of satisfying the prescriptive period set out in G.S. 1-40.

123 N.C. App. at 271, 472 S.E.2d at 378.

Viewed in the light most favorable to the non-moving party, defendant has presented sufficient evidence of the requisite hostility from 1992 through the date this action was filed to survive plaintiffs' motion for a directed verdict. Plaintiffs contend that the families did not have an intent to claim ownership prior to 1992 because they used the property under the mistaken belief that the city owned the disputed property. The cases of *Wall*, *Sebrell*, and *Enzor* are not completely determinative of the issue here. All three cases dealt with the question of mistake concerning the location of a boundary line between the plaintiffs and the defendants. Here, the mistake is the ownership of the property in a third party, the Town of Lake Waccamaw. If the families intended to claim the property as their own prior to 1992, the requisite hostility existed and the time of adverse

possession prior to 1992 could tack to that adverse possession after 1992. *Enzor*, 123 N.C. App. at 271, 472 S.E.2d at 378.

Buddy Pope has lived on Maple Street since 1962 and was a charter member of defendant. He testified that since he moved onto the street, "Beverly [his wife] and I felt that it's [the disputed property's] ours, too." Since Vernon Hall and her husband moved onto Maple Street in 1959, they believed they had the right to use and enjoy the disputed property as their own. Barbara Elliot had lived on Maple Street with her husband since 1959. Since then, the Elliots used the disputed property the same as they used their own and believed that they had the right to use and enjoy the property because it "went with the street." The families never asked permission to use the land or make improvements and excluded others from parking on the property.

There is also evidence that the families invited their guests onto the property, excluded people from the property, and installed posts to keep people from parking on the disputed property. The families placed tables, chairs, play equipment, fire pits, grills, and constructed permanent steps leading from the property to the lake. This evidence, viewed in a light most favorable to defendant, shows that the families, who were predecessors to and who incorporated and transferred their interest to defendant, intended to claim ownership to the extent that the element of hostile possession was properly submitted to the jury.

### C. Exclusive

Plaintiffs also contend that defendant has failed to offer evidence of exclusive possession of the property for the requisite statutory period of twenty years. "Tacking is the legal principle whereby successive adverse users in privity with prior adverse users can tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years." *Dickinson v. Pake*, 284 N.C. 576, 585, 201 S.E.2d 897, 903 (1974) (citing J. Webster, *Real Estate Law in North Carolina* § 289 (1971)).

> The privity requirement is made out and tacking is thus permitted where an initial adverse possessor transfers his possession to a successor adverse possessor by some recognized connection. Thus the privity connection is made out if an adverse possessor transfers his possession to another by deed or will or even by parol transfer.

James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 14-9, at 654 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999).

Defendant presented evidence of privity with the families on Maple Street who incorporated defendant. On 18 October 1992, Vernon Hall, the Popes, and the Elliots transferred title to the disputed property to defendant through a non-warranty deed. On 7 July 1994, the Highs transferred title to the disputed property to defendant through a non-warranty deed. Defendants presented sufficient evidence of privity and tacking to satisfy the requisite statutory period of twenty years for adverse possession.

Plaintiffs further contend that defendant's claim of adverse possession fails as a matter of law because multiple families claimed adverse possession and none are exclusive. Plaintiffs cite multiple cases against "co-adverse possession." However, the cases cited deal with tacking issues and disputes between joint tenants asserting adverse possession as against each other. Nothing in our case law prevents multiple people from claiming ownership by tenancy in common against the true owner. These multiple claimants to the property could transfer their respective interests as tenants in common to a successor entity, as was done here. Defendant must still show that its predecessors-in-interest, as tenants in common, exercised the requisite exclusivity as to the true owner. Defendant presented evidence that, although the families did not exclude their co-tenants, all co-tenants claimed and possessed the property to the exclusion of others. The families put private parking signs on the property, asked people to leave the property, invited guests onto the property, and placed posts along the edge of the property to prevent others from parking there. Taken in a light most favorable to defendant, these actions are sufficient indicia of exclusivity for the jury to determine whether the families claimed as tenants in common exclusively against the true owners.

The dissenting opinion takes the position that, viewed in a light most favorable to defendant, the "defendant failed to establish as a matter of law that defendant was entitled to the subject property by virtue of adverse possession" and that "the trial court erred in denying plaintiffs' motion for a directed verdict." While a jury may agree that "defendant has failed to show exclusive and hostile possession," under our standard of review of a motion for a directed verdict, the trial court properly denied plaintiffs' motion.

The dissenting opinion quotes purportedly factually inconsistent testimony for several of the property owners adjoining the disputed property. These factual inconsistencies are solely for the jury to reconcile and cannot be decided by the trial court as a matter of law.

The dissenting opinion does "not dispute defendant's possession of the property after 1992" and assumes "*arguendo* . . . defendant was in privity with these families to allow tacking." Presuming the property owners mistakenly believed the property belonged to the Town of Lake Waccamaw, their possession would remain hostile and exclusive as against plaintiffs under the standard set forth in *Walls* and *Enzor*. North Carolina allows parties to gain title through adverse possession from a municipality. N.C. Gen. Stat. § 1-35 (2001). *See also Gault v. Town of Lake Waccamaw*, 200 N.C. 593, 158 S.E. 104 (1931).

The dissenting opinion relies on *Ramsey v. Ramsey*, 229 N.C. 270, 49 S.E.2d 476 (1948), to show that defendant's use of the disputed land was not exclusive. *Ramsey* is distinguishable from the case at bar. First, the Supreme Court in *Ramsey* based its holding on the fact that a grantee may not tack the adverse possession of his predecessors-in-interest of land that is not embraced within the description in the grantee's deed. 229 N.C. at 272-73, 49 S.E.2d at 477-78. Here, the disputed property is included in the description in the quitclaim deeds to defendant. Defendant has privity of title to the disputed land and may tack the adverse possession of the individual families.

Secondly, in *Ramsey*, the adverse land had been used "by consent of those who own the record title." 229 N.C. at 272, 49 S.E.2d at 477. The question of record title is in contention in this case. The Town of Lake Wacamaw never held record title, thus, could not give consent. Plaintiffs never gave consent to either defendant or its predecessors-in-interest.

Finally, there is evidence in *Ramsey* that the general public used the property including "children", "workmen", and "those who passed along the road." *Id.* Further, the defendant admitted that the land "has been open to the public for fifty years." *Id.* Here, there is no evidence that the disputed land was open to or used by the "general public." The testimony showed that the families erected "Private Parking" signs, excluded people from the property, and invited their guests onto the property. Even if some evidence was presented that the "general public" had used the land, there is evidence to the contrary. This evidence presents a question for the jury and cannot be resolved by the trial court on directed verdict.

We hold that the trial court did not err in denying plaintiffs' motion for a directed verdict. Defendant presented sufficient evidence of each element of adverse possession to survive a motion for directed verdict.

## VII. Conclusion

The trial court erred in concluding that the language of the 1931 deed was patently ambiguous, denying plaintiffs the opportunity to present extrinsic evidence to show which lots were included within the conveyance, and granting the motion in limine. We also hold that the 1941 deed conveyed all property contained in the "First Tract" of the 1931 deed. As the trial court erred in granting the motion in limine, we need not address plaintiffs' allegation of error in allowing the cross-examination of witnesses regarding a change in plaintiffs' legal theory following a ruling on the motion in limine. Plaintiff's motion for a directed verdict was properly denied. We hold that the trial court's error in granting defendant's motion in limine is prejudicial to plaintiff. We remand the case for a new trial on all issues.

Affirmed in part, reversed in part, and remanded for new trial.

Judge LEVINSON concurs.

Judge HUNTER concurs in part and dissents in part.

HUNTER, Judge, concurring in part and dissenting in part.

I agree with the majority's holding that the trial court erred in concluding that the language of the 1931 deed was patently ambiguous and in denying plaintiffs the opportunity to present extrinsic evidence of whether the "three vacant lots" described in the 1931 deed included the disputed property. However, since defendant failed to present sufficient evidence of the essential elements of adverse possession, I disagree with the majority's conclusion that the trial court properly denied plaintiffs' motion for a directed verdict on defendant's adverse possession claim. Therefore, I respectfully dissent.

A trial court must grant a moving party's motion for a directed verdict "where it appears, as a matter of law, that the nonmoving party cannot recover upon any view of the facts which the evidence reasonably tends to establish." *Beam v. Kerlee*, 120 N.C. App. 203, 210, 461 S.E.2d 911, 917 (1995). When ruling on a motion for a directed verdict, the trial court must consider the evidence in the

light most favorable to the nonmovant. *Id.* "The party claiming title by adverse possession has the burden of proof on that issue." *Crisp v. Benfield,* 64 N.C. App. 357, 359, 307 S.E.2d 179, 181 (1983). Here, the trial court erred in denying plaintiffs' motion for a directed verdict since the evidence, viewed in the light most favorable to defendant, failed to establish as a matter of law that defendant was entitled to the subject property by virtue of adverse possession.

"To acquire title to land by adverse possession, the claimant must show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period (seven years or twenty years) under known and visible lines and boundaries." *Merrick v. Peterson,* 143 N.C. App. 656, 663, 548 S.E.2d 171, 176, *disc. review denied,* 354 N.C. 364, 556 S.E.2d 572 (2001). "The requirement that possession must be hostile in order to ripen title by adverse possession does not import ill will or animosity but only that the one in possession of the lands claims the exclusive right thereto." *State v. Brooks,* 275 N.C. 175, 180, 166 S.E.2d 70, 73 (1969). Further, "[a] claim of adverse possession is based upon an assertion of ownership rights as against *all persons,* not simply the record owner." *Lake Drive Corp. v. Portner,* 108 N.C. App. 100, 103, 422 S.E.2d 452, 454 (1992). Possession for twenty years is necessary to acquire title by adverse possession unless the possession is under color of title which requires seven years. *Marlowe v. Clark,* 112 N.C. App. 181, 435 S.E.2d 354 (1993); N.C. Gen. Stat. § 1-40 (2001); N.C. Gen. Stat. § 1-38 (2001). In the case *sub judice,* defendant was required to prove actual, open, hostile, exclusive, and continuous possession of the subject land for twenty years since it had not had possession under color of title for the required seven years. "Successive adverse users in privity with prior adverse users can tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years." *Beam,* 120 N.C. App. at 212, 461 S.E.2d at 918. Assuming *arguendo* that the families living on Maple Street who used the subject property prior to the formation of defendant were co-adverse possessors and defendant was in privity with these families to allow tacking, defendant has failed to show exclusive and hostile possession of the disputed tract prior to 1992.

Before 1992, the families living on Maple Street who used the disputed property believed that the property was owned by the Town of Lake Waccamaw ("the Town"). Thus, they thought their use was a permitted use and was available to all members of the general public. After the Town denied ownership of the disputed property, the fami-

lies residing on Maple Street began their efforts to claim the property by conveying any interests they had in the property to defendant by non-warranty deeds. Thus, the evidence shows that the attempt of the families to claim ownership of the property was triggered by their discovery that the Town was not the owner of the subject property. I do not dispute defendant's possession of the property after 1992. However, prior to 1992, the Maple Street families did not have exclusive possession of the property nor were they claiming the property as their own as against all others.

There is no question that the families living on Maple Street prior and subsequent to 1978 used the disputed property as an access to the lake as well as a place for family recreational and social activities. These families also periodically provided maintenance of the disputed property, such as mowing, planting flowers, and picking up trash. However, there is no evidence that the Maple Street families had *exclusive possession* of the subject property. The general public still had access to the property since there were no barriers to the general public's ingress onto the property or egress from the property. In addition, there were no "Do Not Trespass" or "Private Property" signs maintained on the property. Use of the property and amenities on the property such as picnic tables, play equipment, permanent steps leading from the shore to the lake, fire pits, and grills was not limited to the families residing on Maple Street. I acknowledge that the families installed posts on the property to prevent parking and littering and installed a "Private Parking" sign on the property to prevent people from drinking alcoholic beverages and disposing of their containers on the property. However, defendant has failed to direct us to any evidence which demonstrates that the families excluded everyone but themselves (and their guests) from using the subject property.

There is also no evidence that the families were asserting ownership rights prior to 1992 since the families used the property as if it were a neighborhood park owned by the Town. The majority opinion quotes Buddy Pope ("Mr. Pope") who has lived on Maple Street since 1963 as stating, " 'Beverly [his wife] and I felt that it's [the disputed property's] ours, too.' " However, this statement does not show that Mr. Pope was claiming the disputed property under a claim of right. In fact, the following testimony elicited during cross and redirect examination of Mr. Pope illustrates his family's perceived permissive use of the property prior to 1992:

LANCASTER v. MAPLE ST. HOMEOWNERS ASS'N

[156 N.C. App. 429 (2003)]

Q. Now, your intention when you started working on the property which took place pretty soon after you moved in, didn't it?

A. Yes, sir.

Q. Was to maintain it for your satisfaction, wasn't it?

A. Well, to the satisfaction of people on the street. We wanted it to look nice like somebody cared about it.

Q. But there was no intention to claim—to maintain it for the purpose of claiming it until 1991, was there?

MR. WILLIS: Objection.

COURT: Overruled.

A. **No, there was no intention of claiming it. We thought it belonged to the Town.**

MR. LEE: No further questions.

REDIRECT EXAMINATION BY MR. WILLIS:

Q. Well, you used the property just like it was yours, didn't you, Mr. Pope?

MR. LEE: Objection.

A. Yes.

MR. LEE: He's leading his own witness, Your Honor.

COURT: Overruled.

A. Yes, we did.

Q. And I think what—when you say you had no intention to claim it, if somebody had come over there and tried to run you off of that property 20 years ago, would you have defended a lawsuit in court over that property 20 years ago?

MR. LEE: Objection.

COURT: Overruled.

A. Yes, probably would have; yeah.

LANCASTER v. MAPLE ST. HOMEOWNERS ASS'N

[156 N.C. App. 429 (2003)]

Q. Well, why would you have done it if you didn't have any intention to claim it, why would you have defended a lawsuit if you didn't have any intention to claim it?

MR. LEE: Objection.

COURT: Overruled.

A. Well, we thought we had **the right to use** it and we didn't want that right taken away from us by anyone and we would have tried to defend it, you know, if we could.

Q. Now, Mr. Lee said you were content to have the Town to [sic] control the property until you found out the Town didn't own it. What control did the Town ever exert over that property?

A. They never did anything down there. They just—**we thought it was theirs and—we kept it up, so they didn't bother it.**

(Emphasis added.) The majority opinion also states that Vernon Hall and her husband, who moved onto Maple Street in 1959, believed they had the right to use and enjoy the disputed property. The majority further points out that Barbara Elliot and her husband, who had lived on Maple Street since 1959, had used the property the same as they used their own. This evidence only shows that these people felt that they had the right to *use* the property not that they were claiming owner-ship of the property. Therefore, this evidence does not establish that the families' possession was adverse for the required twenty years.

I recognize this Court's holding

that where adverse possession originates in mistake but then, upon discovery of the mistake by the adverse possessor, is per-petuated by conscious intent, the uninterrupted periods of adverse possession may be tacked together and considered as one for the purpose of satisfying the prescriptive period set out in G.S. 1-40.

*Enzor v. Minton,* 123 N.C. App. 268, 271, 472 S.E.2d 376, 378 (1996). However, *Enzor* involved the adverse possessors taking possession of land, believing it to be theirs and using it as if it were theirs. Unlike Enzor, the Maple Street families in the instant case used the subject property prior to 1992 believing it belonged to the Town and believing they had permission from the Town to use the property. They were

claiming a right to use the property, not claiming ownership of it. Therefore, their possession of the subject property was not adverse prior to 1992.

The instant case can be compared to *Ramsey v. Ramsey*, 229 N.C. 270, 49 S.E.2d 476 (1948), which involved a tract of land where a spring was located. The Court in *Ramsey* concluded that the defendant, who was claiming title of the tract through adverse possession, had not shown the necessary adverse and exclusive possession. The spring had been used by the defendant and his predecessors in title as the source of their water supply for many years. However, it had also been used by others, such as the plaintiff, children at a nearby school, workmen at a nearby sawmill, and others residing in the neighborhood. The Court noted that the defendant used the spring more regularly and more extensively than others. Nevertheless, the Court still concluded that the defendant's use was not enough to establish adverse possession for the statutory period of twenty years. In the instant case, the land in dispute was also used by the general public even though the neighborhood families used it more regularly and more extensively than others. Thus, as in *Ramsey*, defendant has failed to show the necessary adverse and exclusive possession to gain title to the subject land.

For the foregoing reasons, the trial court erred in denying plaintiffs' motion for a directed verdict on defendant's adverse possession claim because, even when viewed in the light most favorable to defendant, the evidence was insufficient to establish the essential elements of adverse possession.